JOHN LYNCH et al., Appellants, *v.* OSCAR PFEIFFER, Respondent.

OSCAR PFEIFFER, Respondent, *v.* JOHN LYNCH et al., Appellants.

A certificate of incorporation of a religious society organized under the act of 1813 (Chap. 60, Laws of 1813), recited that the meeting at which the organization was perfected was composed of the male members of the congregation. It was objected that the meeting was illegally organized as the female members, alike with the male, were entitled to take part. *Held*, that conceding this right, in the absence of evidence that the female members were excluded, no illegality was established; as if they voluntarily absented themselves, the male members had the right to constitute the meeting.

The certificate recited that "there being no minister, elders or deacons present at said meeting," certain persons named were appointed chairman, assistant chairman and secretary. *Held*, that there was no implication from the language used that there were any elders, and, in the absence of evidence that there were, the appointment was proper under the provision of said act declaring that if there be no elders then two members of the congregation shall preside.

The certificate further recited that, "by general consent, the society is to continue to be known as the Manhattanville Presbyterian Society."

Statement of case.

*Held,* that this was a compliance with the provision of the statute requiring that in the certificate the name or title by which the society '' shall forever thereafter be called and known shall be particularly mentioned and described."

The said society in 1875 made a conveyance of certain real estate to the Presbytery of New York, a corporation authorized to take and hold real estate, in pursuance of an order of the court granted upon a petition stating, in substance, that there was a mortgage upon the premises for $1,500, which, with interest from 1872, was due and unpaid, then held by said Presbytery; that there were unpaid assessments on the land for improvements; that the society and congregation were unable to meet the current expenses of the church, and they had no means of paying the incumbrances except by a sale, that there was besides a floating debt of about $300, and that the church building required extensive repairs, which they were unable to make; also, that at a meeting of the congregation, regularly called, it was resolved to transfer the church property to said Presbytery, and the trustees were authorized to take all steps necessary for a legal transfer. The petition prayed· for and the order granted permission to convey by deed, subject to all existing incumbrances, the amount of which, together with the floating debt, should constitute the consideration. The conveyance was by full covenant deed made in terms subject to the said mortgage. *Held,* that said conveyance was duly authorized and was adequate and sufficient to convey a good title.

*M. A. B. Church* v. *O. S. B. Church* (46 N. Y. 131, and 73 id.. 82) distinguished.

Also, *held,* that upon the conveyance the said mortgage became merged in the superior legal title and ceased to be an incumbrance.

*It seems* that to prevent a merger in such a case the grantee must have some interest to keep the mortgage on foot, and there must be an intent that the merger should not take place.

The Presbytery conveyed the said real estate to P., who contracted to sell the same to McR. The latter refused to complete the sale because of alleged defects in the title. In an action to compel specific performance, aside from the objections above stated, the purchaser claimed that there was a mortgage upon the premises executed by the religious society. The mortgage referred to was payable on demand, and was given nearly twenty-six years before the contract of sale was made. After said conveyance all of the mortgagees named in the mortgage or their representatives, executed releases to the Presbytery, the latter when it sold and conveyed took a mortgage for part of the purchase-money. It was objected that the releases were ineffectual, as the Presbytery did not at the time hold any title. *Held,* untenable; that the fact that it was a mortgagee was sufficient to uphold a release of a prior mortgage; also, that if the releases were otherwise ineffectual they fur-

nished strong evidence, together with the great lapse of time and the fact that it was not mentioned in the petition for sale by the society, that the mortgage was no longer a subsisting incumbrance; also, that if it was not paid or otherwise discharged it was barred by the statute of limitations, and that, therefore, there were no defects shown sufficient to defeat the action.

(Argued May 1, 1888; decided June 5, 1888.)

APPEALS from judgments of the General Term of the Supreme Court in the first judicial department, entered upon orders made January 8, 1886, which affirmed judgments in favor of Oscar Pfeiffer, the defendant, in the action first above entitled and the plaintiff in the second action. (*Mem.* of decision below, 38 Hun, 603.)

These were cross actions to compel specific performance of a contract made February 14, 1883, between said Oscar Pfeiffer of the first part and Anthony McReynolds of the second part, whereby in consideration of the sum of $21,400 to be paid, Pfeiffer agreed to sell to McReynolds certain land situated in the city of New York. One thousand dollars was paid on the execution of the contract, $12,500 was to be paid by assuming a mortgage for that amount then on the land, and the balance of $7,900 was to be paid in cash on delivery of the deed. A deed containing the usual full covenants was to be delivered on the 15th day of March, 1883; and on that day Pfeiffer tendered a deed which McReynolds refused to receive, on the ground that the title was defective and the property not free from incumbrance. Prior to the fifteenth day of March, McReynolds assigned his contract to John Lynch, and the tender of the conveyance was made to both Lynch and McReynolds. Both actions were tried at the Special Term at the same time, and it was there found that Pfeiffer had tendered and was able to give a good title, and in his action specific performance was decreed. The complaint in the action commenced by Lynch was dismissed.

*Matthew Daly* for respondent. The Manhattanville Society was never legally organized so as to be capable of

taking or holding real estate. (2 R. S. [6th ed.], 1654, 1657.) As the acts of neither the society nor the Presbytery indicate an intention that a merger of the mortgage made by the Manhattanville Society to Van-Allen should take place, the claim that it was merged is untenable. The question of merger is one of intention and of fact. (*Millard* v. *McMullin,* 5 Hun, 572; *White* v. *Leslie,* 54 How. 394; *Purdy* v. *Huntington,* 42 N. Y. 334; *Decatur* v. *Walker,* 17 Sup. Ct. Rep. [Mass.] 688; Thomas on Mortgages, 131.) There being no evidence of the actual date of the delivery of the deed to the Presbytery, its date is presumptively the true time of its execution and delivery. (Gerard on Titles, 514; *Jackson* v. *Hill,* 5 Wend. 532; *Robinson* v *Wheeler,* 25 N. Y. 260.) The Revised Statutes do not affect this rule where the deed has been acknowledged. (*Elsy* v. *Metcalf,* 1 Denio, 323; *Robinson* v. *Wheeler,* 25 N. Y., 260.) Under the Revised Statutes a release is good as a grant, and in this state good as a conveyance by bargain and sale, and sufficient to pass the fee where the releasee was not in possession even where the word "grant" was not used. (*Jackson* v. *Fish,* 10 Johns. 456; 21 Wend. 125; *Lynch* v. *Livingston,* 2 Seld. 422.) A religious association has not power to convey real estate at common law. (2 Kent's Com. 281; *De Ruyter* v. *Trustees of St. Peter's Ch.,* 3 Barb. Ch. 119; *S. C.,* 3 Comst. 239; *Canal Appraisers* v. *People,* 17 Wend. 584; Willard's Eq. 734, 735; *M. A. Baptist Ch.* v. *O. St. Baptist Ch.,* 46 N. Y. 141, 142.) As the Presbytery nowhere assumed or agreed to pay the incumbrances, or to pay anything, the incumbrances, therefore, although directed to be expressed as the consideration of the deed, do not and cannot constitute the consideration of a sale. (*Madison Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.,* 46 N. Y. 131; 73 id. 82.) A religious society having no common-law power to hold or transfer real estate, proceedings taken for the purpose of enabling them to transfer must be strictly construed, and the case of a town issuing bonds is analogous. (*Cagwin* v. *Town of Hancock,* 84 N. Y. 532; *Peck* v. *Burr,* 10 id. 299; *Town of Venice* v. *Woodruff,* 72 id. 465; *Town*

*of Oakland* v. *Skinner*, 4 Otto, 258; *Town of S. Ottawa* v. *Perkins*, 4 id. 258; *Horton* v. *Town of Thompson*, 71 N. Y. 513; *Town of Lyons* v. *Chamberlain*, 89 id. 579.) Where any court or officer has acted without jurisdiction the acts are void, and no appeal or *certiorari* is necessary to get rid of them, but whoever acts thereunder is a trespasser. (*Van Rensselaer* v. *Whitbeck*, 17 N. Y. 517.) There is always an implied warranty by the vendor that he has a good marketable title, unless such warranty is excluded by the terms of the contract. (Gerard on Titles [2d ed.] 485.) Equity will not compel a purchaser to take a doubtful title. (*Seymour* v. *De Lancy*, Hopk. 436; affirmed, 5 Cow. 714; Willard's Eq. Jur. 296.)

*Erastus F. Brown* for respondent. As far as the claim of the trustees of the Presbytery by way of a mortgage was concerned, their acceptance of the deed worked a merger of the mortgage and was, of itself, a discharge of so much of the liability of said society. (*M. A. Baptist Ch.* v. *Baptist Ch. of O. St.*, 46 N. Y. 131; 73 id. 82.) Upon the conveyance of the property by the Manhattanville Presbyterian Church to the trustees of the Presbytery of New York the mortgage became extinct. (*Smith* v. *Roberts*, 91 N. Y. 470.) Independent of Amelia M. Mason's rights, as sole legatee and devisee under the will of her husband, she had the power, under the mortgage, to release the mortgaged premises. (*Doolittle* v. *Lewis*, 7 Johns. Ch., 45; *White* v. *Hicks*, 43 Barb. 64, 88; affirmed, 33 N. Y. 383; *Austin* v. *Hall*, 13 Johns. 286; *Decker* v. *Livingstone*, 15 id. 479.) The certificate of incorporation was in all respects sufficient. (*Methodist E. Ch.* v. *Pickett*, 19 N. Y. 482.)

Earl, J. Several objections were made by Lynch and McReynolds to the title tendered them by Pfeiffer, and it is proper that the objections should be examined in detail:

(1.) The title to the land comes through mesne conveyances from the Manhattanville Presbyterian Society, which purchased and took a conveyance of the land in June, 1882. It

is objected that that society was not regularly organized, and that it could not, therefore, hold or convey land. It was organized under the act chapter 60 of the Laws of 1813, providing for the formation of religious associations. That act specifies particularly how societies of this kind could be organized, and, so far as we can perceive, all of its provisions were complied with.

It is recited in the certificate of incorporation that the meeting at which the organization was perfected, was composed of the male members of the congregation; and it is objected that the meeting was illegally organized if confined to the male members, as all the members of the congregation, both male and female, were entitled under the act to take part in the meeting. The organization was perfected the 15th of August, 1851. It is claimed, on the part of Pfeiffer, that the statute prescribed that none but male members of legal age could participate in the meeting. We are referred to no statute making such a provision. But if we assume that all the members of the congregation of lawful age had the right to participate in the meeting, it is not shown that any were excluded. While it is recited in the certificate that the meeting was composed of the male members of the society, for aught that appears the female members may have absented themselves, and if they did the male members had the right to constitute the meeting. Certainly there is nothing to show that any female member was excluded from the meeting.

The statute provides that on the day of the election two of the elders shall preside, and if there be no such officers, then two members of the congregation shall preside at the election. The certificate recites that " there being no minister, elders or deasons present at said meeting, David Stevens was appointed its chairman, R. C. Andrews, assistant chairman, and William R. Dunshee, secretary." There is no implication, from this language, that there were any elders, and there is no proof that there were any. Hence it was perfectly proper for the members of the congregation present to select two of their number to preside at the election of trustees.

The certificate further recites that "by general consent the society is to continue to be known as the Manhattanville Presbyterian Society." That is a perfect compliance with the provision of the statute, which requires that in the certificate of the incorporation "the name or title by which the said trustees and their successors shall forever thereafter be called and known, shall be particularly mentioned and described."

We are satisfied, therefore, that the Manhattanville Presbyterian Society was legally organized.

(2.) It appears that the Manhattanville Presbyterian Society made a conveyance of this land by deed dated May 15, 1875, to the Presbytery of New York, a corporation authorized to take and hold real estate. But it is claimed that the society was not authorized to make that conveyance, and hence that it was void and no title passed to the Presbytery. It was provided in the act of 1813 that the chancellor, to whose powers the Supreme Court has succeeded, in case he should deem it proper, could make an order for the sale of real estate belonging to a religious corporation, and direct the application of moneys arising therefrom by the corporation. In pursuance of that provision, in May, 1875, the trustees presented a petition to the Supreme Court in which they represented that the Manhattanville Presbyterian Society was seized in fee of the land in question; that in 1857, by virtue of an order of the court, the trustees executed a mortgage to one Van Allen upon which there was then due and unpaid the principal sum of $1,500, and interest from June, 1871; that that mortgage, through several mesne assignments, was then held by the trustees of the Presbytery of New York; that there were unpaid assessments upon the land for improvements, bearing interest at the rate of twelve per cent from the date of confirmation; that the church membership of the society and congregation was so reduced in numbers as to make it impossible to meet the current expenses of sustaining their church property and religious worship therein; that they had no income except from the rental of pews and that that was wholly insufficient for the purposes aforesaid; that they

had no means of paying the incumbrances except by a sale of the premises; that besides a floating debt of about $300, the church building required expensive repairs, which they were unable to make; that the location of the property was such as to expose it, from time to time, to other assessments for street openings or other objects; that at a meeting of the congregation, regularly called, it was resolved to transfer the church property to the trustees of the Presbytery of New York, and that the trustees of the church be authorized to take all measures necessary for a legal transfer of the same; and they prayed that an order might be entered authorizing them to execute and deliver to the trustees of the Presbytery of New York a deed in fee simple conveying to them and their successors and assignees the premises described, subject to all existing incumbrances, the amount of which, together with the floating debt, should constitute the consideration to be expressed therein. The court thereupon made an order that the trustees of the society be authorized to execute and deliver to the trustees of the Presbytery of New York a deed in fee simple of the land described in the petition; that such deed be subject to all existing incumbrances, and that the amount thereof, together with the floating debt of $300, constitute the consideration to be expressed in the deed. In pursuance of that order, on the 18th day of May, 1875, the society executed a deed to the trustees of the Presbytery of the premises described, reciting a consideration of $3,736, "lawful money of the United States of America, to it in hand paid by the party of the second part." The deed contained the usual full covenants and was made in terms subject to the Van Allen mortgage. Thereafter, on the 7th day of November, 1881, the trustees of the Presbytery of New York, by a deed containing no covenants, conveyed the same land to Pfeiffer, and Pfeiffer, to secure a portion of the purchase-price, executed to them a mortgage for $12,500.

We see no reason to doubt that the deed from the Manhattanville Presbyterian Society to the trustees of the Presbytery of New York was duly authorized and in all

respects adequate and sufficient to convey a good title to the premises. The petition was sufficient to give the court jurisdiction to make the order, and although the deed recites that the consideration was the sum of $3,766, in hand paid, yet it would not be invalid if the consideration had not in fact been paid, but had been agreed to be paid. In reaching the conclusion as to the validity of that conveyance we come in conflict with nothing decided in *Madison Avenue Baptist Church* v. *Oliver Street Baptist Church* (46 N. Y. 131, and 73 id. 82.) In that case this court held upon the facts there appearing, which were very unlike those in this case, that no sale of the property was intended; that the whole scheme was to effect a union of the two churches and a dissolution of the grantor as a religious corporation, which was to reap no benefit whatever from the conveyance, and hence that it could not be regarded as a sale. Here the grantor survived as a corporation, and was to be benefited by the payment of its debts, and there was a transmission of property from one party to another for an adequate consideration, and hence in every sense there was a sale.

(3.) The Van Allen mortgage did not after the conveyance continue to be an incumbrance upon the premises, but became merged in the superior legal title which the trustees of the Presbytery took by the deed. In order to prevent a merger in such a case the grantee should have some interest to keep the mortgage on foot, and there must be an intent that the merger should not take place. (*James* v. *Morey*, 2 Cow. 246; *Champney* v. *Coope*, 32 N. Y. 543; *Bascomb* v. *Smith*, 34 id. 320.) Here, after the conveyance to the Presbytery, so far as appears, it had no interest whatever in preserving the lien of the mortgage, and there was clearly no intention on the part of the Presbytery to keep the mortgage on foot. All the facts show that it was the intention of the parties that the Presbytery should pay the mortgage as a part of the consideration for the purchase of the property, and therefore the Van

Allen mortgage ceased to be an incumbrance upon the property.

(4.) It is further objected that the property was incumbered by a mortgage made by the Manhattanville Presbyterian Society to William G. Bull, John L. Mason, William P. Cook and Jesse W. Benedict on the 30th day of April, 1857, nearly twenty-six years before the contract of sale between Pfeiffer and McReynolds. That mortgage was payable on demand, and hence has long since apparently been barred by the statute of limitations. After the conveyance by the trustees of the Presbytery to Pfeiffer all the mortgagees named in that mortgage, or their representatives, executed releases thereof to the trustees of the Presbytery of New York. It is claimed, however, that those releases were ineffectual because the Presbytery did not at the time hold any title to the premises. But it was at that time a mortgagee of the premises, and that was sufficient to uphold a release of a prior mortgage. The facts show sufficiently that it was the intention of the Presbytery by obtaining the releases to perfect the title which it had conveyed to Pfeiffer. But if the releases were otherwise ineffectual, they furnish strong evidence, together with the great lapse of time and the omission to mention the mortgage in the proceeding for the sale of the land by the Manhattanville society, that the mortgage is no longer a subsisting incumbrance or obligation, and the same if not paid or otherwise discharged is barred by the statute of limitations.

We have, therefore, reached the conclusion that the title tendered by Pfeiffer in performance of his contract was reasonably clear from any defect. The alleged defects, if any exist, are merely fanciful and not substantial, and are not sufficient to defeat an action for specific performance.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.