(20 Misc. Rep. 558.)

MOSKOWITZ et al. v. HORNBERGER.

(Supreme Court, Appellate Term. July 1, 1897.)

1. REAL-ESTATE BROKERS—COMMISSIONS—ABILITY OF PURCHASER.
   A broker employed to effect an exchange of property, in order to recover commissions, must show, not only his employment and the making of a contract for the exchange, but also that the person procured by him was able to carry out such contract by giving a marketable title to the property offered by him in the exchange.

2. SAME—MARKETABLE TITLE—EVIDENCE.
   Proof that a party has executed a formal contract to convey certain property in exchange for other is sufficient prima facie evidence of his title thereto, in an action by a broker for commissions on effecting the exchange.

3. No SET EVIDENCE SUPPLIED BY DEFENDANT.
   When a defendant does not rest upon a defect in the proof of his adversary pointed out by a motion for a nonsuit, and the necessary evidence is afterwards supplied by either party, the objection is obviated, and the case must be decided on the entire evidence.

4. DEVISE TO CORPORATION— A D TY—WHO MAY QUESTION.
   A devise to a corporation can be questioned, on the ground that it is in excess of the property which the corporation had power to hold, only by the state, or by one who can claim an interest in the property if it is adjudged that the corporation may not; and the question must be raised in a direct proceeding, and not collaterally.

5. SAME  A ES.
   It seems that a claim to invalidate a devise to a corporation upon the ground that the value of the property exceeded that which the corporation was entitled to hold would be barred by a delay of 15 years by the parties in interest, during which time rights of bona fide purchasers had intervened.

6. EX A ALLOW CE POWER OF ENERAL TERM.
   When no mention for an extra allowance has been made at the trial, the general term, before which exceptions are heard in the first instance, has no power to award such allowance, but a motion therefor must be made at special term.

7. BROKERS—RELINQUISHMENT OF COMMISSION—CONSIDERATION.
   When a broker has been employed to effect an exchange of property, and has earned his commission by obtaining a valid contract therefor, an agreement, subsequently made, to claim no commission unless the deeds pass or his client's title proves unmarketable, is without consideration.

Appeal from city court of New York, general term.

Action by Joseph Moskowitz and another against George Hornberger. From a judgment of the general term of the city court (43 N. Y. Supp. 1130) overruling defendant's exceptions, and directing a judgment on a verdict in favor of plaintiffs, defendant appeals. Reversed in part.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

L. S. Goebel (E. W. S. Johnston, of counsel), for appellant.

D. Leventritt and Harold Nathan, for respondents.

McADAM, J.    The plaintiffs sued to recover brokerage for effecting an exchange of the defendant's property, known as No. 62 Seventh street, for premises known as Nos. 339, 341, 343, 345, and 347 East Twelfth street, in this city.    The plaintiffs allege an employment by the defendant to act for him as brokers, and a promise to pay them $400 as compensation in case they succeeded, and that, acting thereunder, they did succeed in effecting the exchange.

The plaintiffs proved that they effected the exchange so far, at least, that through their efforts a valid contract was entered into by competent persons to make the same upon terms and conditions agreeable to the principals, even as to details, which were carefully expressed. While this is ordinarily all a broker can do, he must, if employed to effect an exchange, go a step further, and prove that the person procured was able, as well as willing, to carry out the contract made, and that the trade fell through by reason of the inability or capriciousness of his employer to consummate it.    Woolley v. Lowenstein, 83 Hun, 158, 31 N. Y. Supp. 570; Emens v. St. John, 79 Hun, 99, 29 N. Y. Supp. 655.

As was said in Barnes v. Roberts, 5 Bosw. 84:

"It is one thing to agree with a broker to pay him a stipulated sum to obtain from a third person a valid contract to make a prescribed exchange, and another thing to agree to pay a fixed sum to effect or negotiate an exchange which will vest in the employer a good title to designated lots."

Or in the language of the court in McGavock v. Woodlief, 20 How., at page 221:

"The broker must complete the sale—that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on—before he is entitled to his commissions.    Then he will be entitled to them, though the vendor refuse to go on and perfect the sale."

These cases were cited in Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091, wherein the distinction between an employment "to effect an exchange" and "to procure the execution of a contract for an exchange" was recognized and acted upon.

The defendant claimed that the plaintiffs were bound to prove, before they rested their case, that the person procured by them to make the exchange had a good, marketable title to the property he contracted to give for the defendant's property.    In a limited sense, this is so; but the fact that such person executed a formal contract to convey carried with it the legal presumption (which is proof in the first instance) that he was able to perform his undertaking. Hart v. Hoffman, 44 How. Prac. 168.    The onus was thereby shifted

upon the defendant to prove that the title offered by such contracting party was for some reason defective. It is laid down as a settled principle that:

"When a person is in possession of property, and is shown entitled to the beneficial ownership thereof, the presumption is that every instrument has been executed, and everything has been done, to render his title legal." Lawson, Pres. Ev. 419.

The defendant assumed the burden of attacking the title offered by the purchaser procured by the plaintiffs, but failed to establish any valid objection to it.

Even if the onus ought to have been borne by the plaintiffs in the first instance, the rule is that where a defendant does not rest upon a defect in the proof of his adversary pointed out by motion for a nonsuit, and the necessary evidence is afterwards supplied by either party, the objection is obviated, and the case must be decided upon the entire evidence in at the time of its submission for decision. Bartholomew v. Lyon, 67 Barb. 86; Tiffany v. St. John, 65 N. Y. 317; Painton v. Railway Co., 83 N. Y. 7; Meyers v. Cohn, 4 Misc. Rep. 185, 23 N. Y. Supp. 996; Pollatschek v. Goodwin, 17 Misc. Rep. 587, 40 N. Y. Supp. 682; Sullivan v. Brooks, 10 Misc. Rep. 368, 31 N. Y. Supp. 36.

It appeared that Miller, the proposed purchaser, received title by deed from Charles Meyer, July 11, 1893; that Meyer received title by deed in September, 1892, from the St. John Baptist Fund, a religious corporation organized under the act of 1848; and that said corporation acquired title by devise under the will of Helen S. Folsom, dated July 17, 1876, and the codicil thereto made January 14, 1882. The testatrix died April 26, 1882, and at that time all corporations formed under the act of 1848 (chapter 319); as amended (Laws 1872, c. 649; Laws 1881, c. 641), were declared "capable of taking, receiving, purchasing and holding real estate for the purpose of their corporation to an amount not exceeding the sum of two hundred thousand dollars in value, and personal estate for like purposes to an amount not exceeding the sum of two hundred thousand dollars in value, but the clear annual income of such real and personal estate shall not exceed the sum of fifty thousand dollars."

The will speaks as of the time of the death of the testatrix, and the statute in force at that time operates upon and controls its validity.

The objection urged by the defendant is that the value of the property devised exceeded the statutory limitation. No fault is found with the will itself, or the sufficiency of the devise as a testamentary disposition of the property. Nothing appears on its face to suggest, or even give color to, any question of illegality.

The will was admitted to probate in 1882, 15 years ago. No one interested in the estate has attacked or even questioned the disposition of the property made by the testatrix, or attempted to restrain the devisee from making transfers thereof to purchasers. The corporation took possession of the devised property in 1882, and has conveyed parts of it, and its right to make such disposition has remained unchallenged until now, when an attack is made by a purchaser from an intermediate grantee; the ground being that, because

certain witnesses are of opinion that the value of the devised property exceeded the statutory limit, the title is defective. This collateral mode of attacking a devise apparently legal, and at most voidable only, is without warrant in law, particularly at this late day. In Church of the Redemption v. Grace Church, 68 N. Y. 570, 582, it was held that, to enable a person to make inquiry into an excess of accumulated property held by a corporation, he must be in a position to claim an interest in the property, if it is adjudged that the corporation may not. The restrictions imposed by the charter of a corporation upon the amount of property it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the state. Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336. And see Bank v. Matthews, 98 U. S., at page 628. "It is in accordance with this reasoning that a deed of real estate to a national bank or other corporation rendered incompetent by its charter or enabling act to hold the real estate conveyed is not void, but voidable only at the suit of the government; for to make such conveyances void would work the greatest hardship and uncertainty of title in subsequent purchasers, and all purposes of public policy are amply subserved by holding the deed voidable at the suit of the government." Tayl. Corp. (3d Ed.) § 303. See, also, 3 Washb. Real Prop. (5th Ed.) 283; Bogardus v. Trinity Church, 4 Sandf. Ch. 634. While our courts have held that the heirs may contest the right of the corporation (In re McGraw's Estate, 111 N. Y. 67, 99, 19 N. E. 233; Rich v. Tiffany, 2 App. Div. 25, 37 N. Y. Supp. 330), it is not to be raised collaterally (Trustees v. Ritch, 91 Hun, 509, 36 N. Y. Supp. 576, affirmed 151 N. Y. 282, 45 N. E. 876; Lewis v. Cook, 150 N. Y. 163, 44 N. E. 778), as the devise is invalid only as to the state or the heirs, for the latter would take if the devisee did not (see cases collated in Abb. Ann. Dig. 1889, p. 53, tit. "Colleges").

The evidence does not satisfactorily establish that the state or the heirs might have succeeded in an attack upon the devise if either had chosen to make one, and that result is such an improbable and remote contingency now that we cannot hold that a court of equity would not, in the exercise of a sound discretion, have compelled the defendant to complete the exchange (Cambrelleng v. Purton, 125 N. Y. 610, 26 N. E. 907), particularly as the remedy, if available, has been open for 15 years, and those having the right have not attempted to resort to it. If they ever supposed there was the slightest possibility of succeeding in any such claim, their silence would indicate a purpose not to assert it; and their inexcusable laches would not assist them in asserting any equitable claim for relief, especially where the rights of innocent purchasers have intervened. The doubts cast upon the title by the defendant are more fanciful than substantial. Lynch v. Pfeiffer, 110 N. Y., at page 42, 17 N. E., at page 405. And we may, for the purposes of this appeal, safely say that the title offered by the proposed purchaser was marketable (that is, free from all reasonable doubt), and should have been accepted by the defendant. Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233; Insurance Co.

v. Woods, 121 N. Y. 302, 24 N. E. 602. See, also, decision by Truax, J., in Hornberger v. Miller, New York Law J. May 14, 1897.[1]

The defendant, having chosen to put his refusal to take upon the ground that the title of the proposed purchaser was bad, when it was not, is probably liable for the brokerage, without regard to whether his title was good or not. Without putting our decision upon that ground, we will consider how far the defendant's title need be investigated. Upon the cross-examination of one of the plaintiffs, the defendant proved, and then put in evidence, an agreement signed by them, wherein it is provided:

"No commissions to be paid to us by George Hornberger unless deeds to said premises pass, unless Hornberger's title should prove on examination unmarketable, in which event he is to pay the commission, to wit, $400."

The defendant proved that no deeds passed between the parties to the exchange; so that, according to his contention, the right to brokerage was made to depend upon the single question whether his title proved on examination to be unmarketable. We think the defendant became liable, irrespective of the question whether he had good title or not. So long as the purchaser procured by the brokers had good title, they earned their brokerage when they produced him to the defendant, and he offered to make a binding contract for the exchange. The agreement to wait until the title deeds passed, and that no brokerage was to be paid unless the defendant's title proved unmerchantable, was exacted after the brokerage had been earned, and was on that account without consideration. McComb v. Von Ellert, 7 Misc. Rep. 59, 27 N. Y. Supp. 372. It was therefore immaterial whether the defendant's title was good, bad, or indifferent. If he wanted to test his title, he should have done so in a direct proceeding against the customer produced, either for specific performance or damages, where it might more properly have been passed

---

[1] The opinion of Judge Truax, at special term, in the case of Hornberger v. Miller, is as follows: "On the day when the titles were to be closed, the plaintiff refused to accept defendant's deed, because the defendant's title was not good, and the defendant refused to accept plaintiff's deed because plaintiff's title was not good. The plaintiff brings this action to compel the defendant either to specifically perform his contract to convey, or, in case the defendant cannot give a good title to the premises that he agreed to convey to the plaintiff, that he have judgment against the defendant for the damages that he (the plaintiff) has sustained, because of his (the defendant's) failure to convey. Plaintiff contended on the trial that the defendant's title was bad, and justified his refusal to accept defendant's deed on that ground; and, in order to succeed in this action, he must establish that the defendant's title, at the time of the refusal, was bad. I am of the opinion that the defendant's title was and is good. It may be that more property than the "Foundation" was entitled to hold was devised to it by Miss Folsom, but there is nothing in the case that shows that all of the property so devised was in excess of what the Foundation was entitled to hold; and therefore I cannot hold that the particular piece of property that the defendant agreed to convey to the plaintiff formed part of the property that the Foundation could not hold. Moreover, the record title stood in the Foundation, and it could give a good title to bona fide purchaser for value. I am also of the opinion that plaintiff's title was not a marketable one, because James A. Dusenbury never had parted with his interest in the property. For the reasons above stated, the complaint is dismissed, with costs, and with an extra allowance of $40, and I direct that a judgment in accordance with this decision be entered."

upon. The evidence produced by the brokers established complete performance on their part so far as performance by them was possible. In this view of the case, the evidence offered tending to show that the defendant's title was defective, the exceptions taken thereto, and the arguments advanced upon the special agreement aforesaid, are immaterial. The amendment conforming the pleadings to the facts proved is also immaterial. It did not prejudice the defendant in any manner.

Upon the conclusion of the trial, both sides asked for the direction of a verdict, and the court ordered the jury to find for the plaintiffs, the exceptions to be heard in the first instance at general term. The general term overruled the exceptions, and ordered judgment for the plaintiffs. The power of the general term ended there. Douglas v. Haberstro, 10 Abb. N. C. 6. After obtaining the order for judgment, the plaintiffs might have applied, on notice at special term, for an extra allowance, when the defendant would have been heard as to the propriety of granting such relief, and as to the amount. This is the practice when the application is not made at the trial. Howe v. Muir, 4 How. Prac. 252; Railroad Co. v. McCoy, 9 How. Prac. 339. The allowance granted by the general term, having been made without notice or hearing, was unauthorized. Briggs v. Brooks, 79 Hun, 394, 29 N. Y. Supp. 794; Toch v. Toch, 9 App. Div. 501, 41 N. Y. Supp. 353.

As to the allowance, therefore, the judgment must be reversed, but in other respects affirmed, without costs upon this appeal. All concur.