## Matilda B. Wende, Plaintiff, *v.* Harry Wende and Others, Defendants.

Supreme Court, Erie County, July 14, 1931.

*LeFay Wilkie*, for the plaintiff.

*Shire & Jellinek*, for the defendants Dixie Wende and Harry Wende.

*Gibbons & Pottle*, for the defendant John A. Wende.

*Charles A. Hohl*, for himself and Marine Trust Company, defendants.

CHARLES B. WHEELER, Official Referee. John Wende (now deceased) in his lifetime became the owner of certain real property on Highgate avenue in the city of Buffalo. At the time the property in question was conveyed to him it was subject to a mortgage for $5,000 held by the Albany County Savings Bank, which the grantee assumed and agreed to pay. The savings bank was paid the amount of this mortgage, and assigned the same to Simon F. T. Wende, who was a son of John Wende. Simon F. T. Wende was or became a resident of the State of California, and died in that State unmarried, without issue, and intestate on the 24th of July, 1928. His father, John Wende, was his next of kin and sole heir at law under the statutes of California. The Wells Fargo Bank and Union Trust Company of San Francisco was appointed the administrator of the estate of Simon Wende.

John Wende died in the city of Buffalo on the 8th day of March, 1930, leaving him surviving his widow, Matilda B. Wende, this plaintiff, and two children, the defendants John A. Wende and Harry Wende. The defendant Dixie Wende is the wife of Harry Wende. Matilda Wende was the second wife of John Wende, but not the mother of Simon Wende.

After the death of Simon Wende, and on or about the 15th day of September, 1928, John Wende executed to the defendant Dixie Wende an assignment of all his right, title and interest in the estate of his son Simon Wende (deceased).

Thereafter the administrator of the estate of Simon Wende executed and delivered to the defendant Dixie Wende an assignment of the $5,000 mortgage above referred to, and set over to her the balance of Simon Wende's estate. No money was paid by Dixie Wende for such assignment. The estate of Simon Wende was duly administered by the administrator and by decree of the court of California closed, and distribution ordered.

The plaintiff contends that upon the death of Simon Wende, John Wende, his father, as next of kin and heir at law, became the owner of the $5,000 mortgage in question, and by operation of law this mortgage became merged in the fee of the property,

and, therefore, there remained no valid mortgage to assign to the defendant Dixie Wende, and that in the admeasurement of the plaintiff's right of dower in the real estate in question the value of such dower interest should be determined by eliminating from consideration the $5,000 mortgage in question. All the defendants challenge this contention except the son, John Wende, who makes the same legal contention as the plaintiff as to the merger of said mortgage. To determine the questions at issue, resort must be had to the statutes of the State of California, and an examination of the decisions of its courts construing such statutes, and also to the general law of the State of New York touching the merger of mortgages.

As already stated, the administrator of the estate of Simon Wende administered his estate, and made its report to the court, and by decree of the Superior Court of that State dated the 18th day of March, 1929, its accounts were passed, settled and allowed. By the decree it was adjudged that all the residue and remainder of the estate of Simon Wende should be distributed to Dixie Wende, among other things specifically mentioning as part of such residue and remainder the mortgage in question.

Counsel for the defendant Dixie Wende contends that this decree is final and conclusive as against this plaintiff as to the right of Dixie Wende to the ownership of the mortgage and of her right to assert and enforce the same against the property it covered, and that the plaintiff cannot by reason of such decree assert any right of dower adverse to it.

Counsel for Dixie Wende calls the attention of the referee to section 1666 of the California Code of Civil Procedure providing that " *Such order or decree is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal.*"

He also cites many decisions of the California courts holding generally that a decree of distribution by a court having jurisdiction of the proceeding is conclusive upon all the heirs, legatees or devisees whose interest are involved in the proceeding thus adjudicated. Counsel cites the cases of *French* v. *Phelps* (20 Cal. App. 101); *Estate of Tymms* (78 id. 79); *Estate of Hunter* (99 id. 19); *Miller* v. *Pitman* (180 Cal. 540); *Estate of Scrimger* (188 id. 158).

The referee does not question the correctness of the decisions of the California courts, but does question their application to the case now in hand and to be decided in this action. The plaintiff here does not claim as heir, legatee or devisee of Simon Wende. She asserts nothing in any such capacity against his estate. She asserts no distributive share in Simon Wende's estate.

Her claim to dower is not even asserted as heir, legatee or devisee of her husband, John Wende, deceased, but she claims a right of dower once inchoate (now vested), by virtue of the common law, and statutory right given in her late husband's real property, all of which is dependent, not on the law of California, but by virtue of the laws of the State of New York relating to real property located in New York.

Certainly the courts of California could not deprive one of a property right in such real property located here by a decree in an estate where such person has no interest even as heir, legatee or devisee. The decree in the Simon Wende estate does not even assume to do so. It specifically holds that John Wende, the father of Simon, was " *his sole heir at law,*" and then simply recites that John Wende had transferred all his right, title and interest in Simon Wende's estate to Dixie Wende, and that " such residue of said estate should be distributed to said Dixie Wende."

The administrator accordingly assigned said mortgage to Dixie Wende. The decree did not undertake to pass on the question as to whether such mortgage was in fact merged or not, or to decree it to be a valid mortgage. The California cour thad no power, authority or jurisdicton to do that, and did not undertake to do so.

We accordingly hold the decree of distribution of the California court is no bar to the plaintiff asserting that by operation of law the mortgage in question became merged in the fee of the property it covered. Whether or not it was so merged remains to be considered and decided.

In this connection it should be stated that by mutual agreement the real property in which dower is asserted has been sold and conveyed for the sum of $10,000, and the fund realized as its purchase price been substituted for the realty.

If, on the other hand, the mortgage did not merge, then the plaintiff's dower would be limited to a life estate in $5,000 only of said fund.

Dixie Wende, the defendant and assignee of said mortgage, alleges she holds the same as a valid and subsisting lien on said real property and in that event would be entitled to payment of said mortgage out of the substituted fund.

We are of the opinion that under the California statutes and the decisions of its courts, the property left by Simon Wende at his death became vested at once in his father, John Wende. We quote some of these provisions and decisions.

Section 1384 of the Civil Code of California (1920) is as follows: " Intestate's estate, to whom passes. The property, both real and personal, of one who dies without disposing of it by will, passes

to the heirs of the intestate, subject to the control of the probate court, and to the possession of any administrator appointed by that court, for the purpose of administration."

" § 1386. Succession and distribution of property of deceased person. When any person having any title to any estate not otherwise limited by marriage contract, dies without disposing thereof by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code and the Code of Civil Procedure, subject to the payment of his debts in the following manner:

" 1. If a decedent leaves a surviving husband or wife, and only one child * * *.

" 2. If the decedent leaves no issue, the estate goes one-half to the surviving husband or wife and the other half to the decedent's father and mother, in equal shares, and if either is dead the whole of said half goes to the other. If there is no father or mother, then one-half goes in equal shares to the brothers and sisters of decedent and to the children or grandchildren of any deceased brother or sister by right of representation. If the decedent leaves no issue, nor husband nor wife, the estate must go to his father and mother in equal shares, or if either is dead then to the other."

We submit the following decisions of the State of California as holding that by the law of California the title to property of a deceased person vests immediately upon his death in the heirs at law and next of kin:

In *Schade* v. *Stewart* (205 Cal. 658) the court said (at p. 660): " Real property described in a deed of trust given to secure a note constituting an asset of a decedent's estate, when purchased at a trustee's sale by an executrix acting in her representative capacity, also becomes an asset of the estate, subject to the possession and control of the said representative for purposes of administration.

" The legal title to such property, in like manner as the title to property owned by decedent at the date of death, vests *en instanti* upon acquisition in those entitled to succeed thereto under the provision of the decedent's last will and testament, or in cases of intestacy, in the heirs at law according to the laws of succession."

In *Estate of Patterson*, 155 Calif. 626, under our Code, the devisees and legatees take at the moment of the testator's death their title from the will itself and not from the probate thereof. The probate procedure was established to furnish an exclusive mode for the settlement of all disputed questions surrounding the executions of wills and to provide exclusive evidence of their contents.

In *Raulet* v. *Northwestern Insurance Co.* (157 Cal. 213, at p. 227)

the court says: " It is well established in this state that title to property vests in the heir or devisee from the moment of the death of the ancestor. or testator. * * * In that respect there is no difference under our law between personal and real property."

In *State of California* v. *Miller* (149 Cal. 208, at p. 210) the court says: " Under our law of succession the title to the estate of a person dying intestate vests in the heirs, whether known or unknown, immediately upon his death." (Citing Code section 1384 and various California cases.)

In *Estate of Yorba* (176 Cal. 166, at p. 169) the court says: " Under our system of law, the property of a decedent passes, upon his death, to his heirs or devisees. They take at once by inheritance, or by the terms of the will. Their title does not originate in the decree of distribution, although such decree, when it has become final, constitutes a muniment of title which will prevail over contrary provisions of the will or of the statutes of descent."

In *Western Pacific Railway* v. *Godfrey* (166 Cal. 346, at p. 349) the court says: " That the estate of a decedent vests in his heirs or devisees and legatees immediately upon his death cannot be disputed. [Citing Civil Code sections 1341 and 1384 and various California cases.] Many other cases to the same effect might be cited.

" Pending the administration the personal representatives of the decedent are entitled to the possession of the estate for the purposes of administration, but the title vests in the heirs or devisees and legatees, subject only to the right of possession of the personal representatives of the decedent. * * *

" The legatee does not derive title from the decree of distribution but from the will, which takes effect immediately upon the death of the testator. *The decree of distribution does not create the title.* It merely declares the title that accrued under and by the will," and cases cited.

The above were parts of the opinion of the judge in the District Court of Appeals, and on page 350 the justice writing the decision in the *Godfrey* case says: " Upon further consideration we are satisfied that the views thus expressed are correct and we adopt the portions of the district court of appeal opinion that we have quoted as a part of this opinion."

The mortgage in question, therefore, became and was the property of John Wende, the father, who owned the fee of the property, and ordinarily the mortgage would be deemed to have been merged in the larger estate, unless there are facts and circumstances which would take it out of the general rule.

The general rule is well stated in Thompson on Real Property. At section 4680 it is said:

" § 4680. General doctrine of merger at law and in equity. In law a merger always takes place when a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate. The lesser estate is annihilated or merged in the greater.

" It is a general rule that when the legal title becomes united with the equitable title, so that the owner has the whole title, the mortgage is merged in the unity of possession."

At the end of the section it states: " An intervening incumbrance or equity of any kind is generally sufficient to prevent a merger of the mortgage with the equity of redemption, provided the incumbrance be not one which the owner has assumed to pay."

But counsel for the defendant Dixie Wende contends there are facts and circumstances in this case which take it out of the operation of the general rule, and one of these circumstances or facts is that John Wende intended that the mortgage should not merge, but be kept alive as a lien on the incumbered real property. This contention is based on the assignment made by John Wende to Dixie Wende.

Simon Wende died July 24, 1928. On September fifteenth John Wende executed a paper in the following form:

"IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO.

| In the Matter of the Estate of Simon F. T. Wende, Deceased. | No. 50580    Dept. 10. Assignment of Distributive share. |

" The undersigned John Wende, sole heir at law of Simon F. T. Wende, deceased, hereby transfers, assigns and sets over unto Dixie Wende, all his right, title and interest in and to the Estate of Simon F. T. Wende, deceased,

"Dated: September 15th, 1928.

" JOHN WENDE.

" Witness to signature
" CHARLES A. HAHL

" Endorsed,
" Filed."

It will be noted this paper makes no reference to the mortgage. It neither includes nor excludes the mortgage from the operation

of the assignment. It simply assigns his interest in his son's estate. If as matter of law the mortgage merged then the assignment in itself did not assign the mortgage. Such intention, if made, was formed after the death of his son, and subsequent to the event which plaintiff claims caused the merger.

John Wende in the deed by which he acquired title to the property covered by the mortgage assumed and agreed to pay it.

In Thompson on Real Property it is said (at § 4685): "Payment by one who is bound by contract to pay.—When a mortgage debt is paid by one who is bound by contract to pay it, an assignment of it to him upon payment operates as a discharge. His payment of the amount of the mortgage debt will be held to operate as an extinguishment of the mortgage, and he will not be allowed to hold it as a subsisting incumbrance, as the payment was in pursuance of his agreement and may be regarded as made with the mortgagor's money."

And at section 4686 it is further said: "Effect of assignment to purchaser who has assumed and agreed to pay mortgage.—The purchaser of land subject to a mortgage which he has assumed and agreed to pay, upon taking an assignment of it, thereby pays and satisfies it so far as his grantor is concerned; and as to his grantor the mortgage is paid and satisfied when such purchaser has paid the mortgage and had an assignment of it made to a third person. Not only is the mortgage extinguished when it is paid by a purchaser who has assumed the payment of it but also when it is paid by his grantee, or by any grantee after successive conveyances. The premises in such case become the primary fund for the payment of the mortgage and whoever acquires that fund and the mortgage must also be regarded as having applied the fund to the payment of the mortgage."

At section 4682 it is also said: "Intention as determative of whether merger takes place.— The intention at the time of the payment of the mortgage has sometimes been said to determine the effect of such payment. If there was then no intention on the part of the person making the payment, either actual or to be implied by the condition of things then existing to keep the mortgage alive, *it cannot afterward, upon his forming an intention, or upon a change in the surrounding circumstances, be regarded as a subsisting security.*"

In Jones on Mortgages (8th ed.), section 1100, it is said: "If, however, the purchaser of the equity of redemption from the original mortgagor has assumed and agreed to pay the mortgage, and the wife of the mortgagor has released her dower in the mortgage, but not in the deed to the purchaser, he can not upon

taking an assignment of the mortgage, set it up against the claim of the widow of the mortgagor for her dower, *but the assignment will be held to operate as a discharge, and the widow will be entitled to her dower in the whole estate.*"

At section 1110 this same author says: " No revivor after merger. Although equity will keep a mortgage alive and prevent a merger in order to do justice and conform to the intent of the parties, yet when the circumstances are such as to effect a merger of the lesser estate in the greater, the mortgage become *functus officio*, and no subsequent act of the parties can revive it."

It would seem under the rule stated and the decisions of the California courts that on the death of Simon Wende his father, John Wende, became *eo instanti* the owner of the mortgage, and it merged into the fee, and John Wende's subsequent decision to revive and keep it alive (if such was his intention) would be unavailing to accomplish that end.

If after the assignment by the administrator to Dixie Wende she had sought to foreclose the mortgage, we find nothing in the case which would have precluded John Wende from asserting as a defense that such mortgage had merged in the fee and was deemed paid and discharged. Dixie Wende paid nothing for the mortgage The stipulation of facts is that she parted with no money consideration for it.

In addition to all this John Wende in his lifetime by the deed by which he acquired title to the real property in question assumed and agreed to pay the mortgage. In such cases the rule is: When the rights of the mortgagee and of the owner of the equity of redemption become vested in the same person the lien is said to be merged in the title and thereby to become destroyed unless the intent to the contrary be shown. On the same principle where the person equitably bound to pay a mortgage and to relieve the land of its payment becomes the owner by assignment of the mortgage debt, it becomes thereby satisfied and paid.

There is nothing in the instant case showing it was for his interest or necessary for the protection of John Wende that the mortgage should not merge.

In some cases where such facts are made to appear equity will intervene in the interest of justice to prevent a merger and keep the mortgage alive. We find no such facts or circumstances in the instant case. It is said in *James* v. *Morey* (2 Cow. 246, at p. 258) that " when once the estate is merged, it is gone forever; or, in the language of Blackstone, it is ' annihilated,' and ' shall never exist any more.' * * * Any subsequent act * * *

will avail nothing as evidence of intention, for the merger being perfect, it cannot be done away."

In *Clift* v. *White* (12 N. Y. 519), in an extensive discussion on the question of merger, it is said (at p. 533): "That there was no reason appearing from the case why the two estates should have been kept distinct in the hands of Winter; that unless some beneficial interest for keeping up the distinction clearly appeared, the original and natural conclusion ought rather to be adopted, that when the owner of the equity of redemption pays off a subsisting mortgage he does it to exonerate his estate." At page 536: "' A court of equity,' says Chancellor KENT, 'will keep an incumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party. *It must be an innocent purpose, and injurious to no one.* He states the general rule from *Forbes* v. *Moffatt* [18 Ves. 384] to be that the union of the estates will create a merger, unless there be some beneficial purpose or some declared intent to prevent it.' "

In *Weis* v. *Levy* (106 App. Div. 496, at pp. 500, 501) the court says: "It is the rule at law that where the lesser and larger titles unite in the same owner, the former is swallowed up in the latter. At law, such rule is without exception. In equity, however, the lesser title is not necessarily subject to such rule of merger; and where the intention of the party, however gathered, exists to keep alive the lesser title, it will be deemed not to have been swallowed up in the greater. * * * This doctrine, however, is subject to the qualification that justice will be promoted by the severance and keeping alive of the two titles. *It is never permitted where its enforcement would work a fraud or where the rights of third parties would be prejudiced.*" (See, also, *Mickles* v. *Townsend*, 18 N. Y. 575, 579.)

In *Lynch* v. *Pfeiffer* (110 N. Y. 33, at p. 41) the court says: "In order to prevent a merger in such a case the grantee should have some interest to keep the mortgage on foot, and there must be an intent that the merger should not take place."

Taking into consideration all the facts and circumstances of this case the referee finds that the mortgage in question did merge in the fee of the real property, and that the plaintiff's dower interest is to be computed on the basis of $10,000, being the fund realized on the sale of said property.

Let findings be prepared and such computation be submitted to the referee.