they were made with intent to deceive; that they did deceive; that the plaintiff would not have put up his $1,500 for one-half of the patent, or one-half of the stock of a corporation after it was organized, if he had known of the facts, or that he was in any way damaged by reason of this representation. I can find no allegation to show that the representations were false when made. There was no representation that defendants had paid McClintock $3,000. There was no allegation that the patents were not worth $3,000, that the plaintiff sustained any damage by reason of his purchase, and no allegation that I can find to justify an action to recover damages for false representations.

I think the order appealed from should be affirmed.

---

(160 App. Div. 127)

VENNER et al. v. NEW YORK CENT. & H. R. R. CO. et al.

CONTINENTAL SECURITIES CO. et al. v. MICHIGAN CENT. R. CO. et al.

(Supreme Court, Appellate Division, Third Department. January 14, 1914.)

1. CORPORATIONS (§ 202*)—CONTRACTS—ULTRA VIRES CONTRACTS.

While stockholders who have acquiesced for a number of years in similar contracts may maintain an action in behalf of the corporation to set aside an ultra vires and void contract, yet, where innocent purchasers have acquired rights under such contracts, the courts will be reluctant to give relief.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 777–780, 822; Dec. Dig. § 202.*]

2. EVIDENCE (§ 80*)—PRESUMPTIONS—FOREIGN STATUTES.

In a suit against a number of allied railroad companies, some of which were foreign corporations, to set aside a contract whereby one of the foreign companies guaranteed the debt of the others, it cannot be presumed that the statute law of the state of the guarantor's incorporation prohibited such an agreement; and, in the absence of such showing, relief must be denied.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 80.*]

3. EVIDENCE (§ 73*)—PRESUMPTION—PRESUMPTION OF DUTY.

In a suit to set aside a contract between a number of allied railroad lines, it cannot be presumed that the officers of a foreign railroad company violated their duty when they guaranteed the obligations of other parts of the system.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 94; Dec. Dig. § 73.*]

4. MONOPOLIES (§ 20*)—TRUSTS—SHERMAN LAW.

A joint purchase of equipment by affiliated railroads, operating lines which are run as one system, is in no way violative of the Sherman Law (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), or of Stock Corporation Law (Consol. Laws, c. 59) § 14, denouncing trusts and monopolies.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 20.*]

5. CORPORATIONS (§ 377*)—"FRANCHISE"—WHAT CONSTITUTES.

Stock Corporation Law (Consol. Laws, c. 59), § 52, providing that any stock corporation may purchase, acquire, hold, and dispose of the stocks of any other corporation, or if the corporation, whose stock is so pur-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chased, is engaged in a business similar to that of such stock corporation, the officers of the purchasing corporation shall be eligible as directors of the other corporation, and the corporation holding such stock shall possess and exercise all the rights and privileges of individual holders or owners, confers a franchise upon stock corporations, a "franchise" being a special privilege conferred by the government upon individuals, which do not belong to the citizens of the country by common right, and entitles one railroad company to hold the stock of another so as to make the second a part of its general system.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1531–1534; Dec. Dig. § 377.*

For other definitions, see Words and Phrases, vol. 8, pp. 2929–2942; vol. 8, p. 7666.]

6. CORPORATIONS (§ 377*)—OWNERSHIP OF STOCK OF OTHER CORPORATIONS—DUTIES.

A corporation controlling the stock of another corporation is entitled to shape the latter's general policy, but its control must be exercised in a manner consistent with the purposes for which the corporation was created.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1531–1534; Dec. Dig. § 377.*]

7. CORPORATIONS (§ 413*)—POWERS—TRUSTEE.

Where a corporation is directly empowered to borrow money, it may perform that act through the medium of a trustee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1647–1649; Dec. Dig. § 413.*]

8. RAILROADS (§ 147*)—EQUIPMENT—AGREEMENT FOR PURCHASE—GUARANTY.

Stock Corporation Law (Consol. Laws, c. 59) § 52, authorizes one corporation to acquire the stock of another and to manage the affairs of the second corporation, provided they are engaged in the same business, while section 6 of the same law provides that, in addition to the powers conferred by the General Corporation Law, every corporation shall have the power to borrow money and contract debts necessary for the transaction of its business, or for the exercise of its corporate rights or franchises. Held, that where one railroad company acquired control of the stock of another railroad company, and by that means acquired control of a vast line, the first railroad company was entitled to pledge its own credit in borrowing money for equipment purchases through a trustee, since the right to purchase the stock of other corporations was part of the railroad company's franchise, and it was not only its privilege but its duty to protect the property so purchased.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 459; Dec. Dig. § 147.*]

Kellogg, J., dissenting in part.

Appeal from Special Term, Albany County.

Actions by Clarence H. Venner doing business as C. H. Venner & Co., as a stockholder on behalf of himself and other stockholders against the New York Central & Hudson River Railroad Company and others, and by the Continental Securities Company and Clarence H. Venner against the Michigan Central Railroad Company and others. From a judgment for defendants in each case dismissing the complaint (81 Misc. Rep. 298, 143 N. Y. Supp. 211) plaintiffs appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. Aspinwall Hodge, of New York City, for appellants.

Stetson, Jennings & Russell, of New York City (Charles Howland Russell, of New York City, of counsel), for respondent Guaranty Trust Co., of New York.

Alexander S. Lyman, of New York City (Albert H. Harris and Thomas Emery, both of New York City, of counsel), for other respondents.

WOODWARD, J.   These two actions, brought by minority stockholders of the New York Central & Hudson River Railroad Company and the Michigan Central Railroad Company, to secure an injunction restraining the defendants from consummating an agreement known as the "New York Central Lines Equipment Trust of 1913," on the ground that such agreement is ultra vires the said companies, involve the same broad questions of law, and have been tried and disposed of as one case, and are before this court upon appeal upon the same basis. Both parties moved at Special Term for judgment upon the pleadings, thus eliminating all questions of fact, and the learned court at Special Term has given judgment dismissing the complaints.   The plaintiffs appeal from the orders and judgments.

The plaintiffs, suing in behalf of themselves and all other stockholders of the Michigan Central Railroad, allege that they are the owners and holders of 270 shares of the capital stock of the Michigan Central Railroad Company, and that said company is a railroad corporation organized under the laws of the state of Michigan; that the New York Central & Hudson River Railroad Company is a corporation organized under the laws of the state of New York; that the Lake Shore & Michigan Southern Railroad Company is a corporation organized under the laws of the states of Illinois, Ohio, Michigan, Indiana, Pennsylvania, and New York; that the other defendant railroad companies are corporations organized under the laws of their various states; that the New York Central owns and operates a line of railroad between New York and Buffalo, with various branches in the state of New York; that the Lake Shore owns and operates a line of railroad extending from Buffalo through Cleveland and Toledo, Ohio, to Chicago, Ill., and controls, through ownership of a majority of its capital stock, the Nickle Plate, which also owns and operates a line of railroad extending from Buffalo, through Cleveland, to Chicago; that the Michigan Central controls, by lease and a majority stock ownership, and operates, the Canada Southern Railway, extending from Buffalo to Windsor, Canada, opposite Detroit, and owns and operates a line of railroad from Detroit to Chicago, also a railroad extending through a tunnel under the Detroit river, connecting the Michigan Central with the Canada Southern; that the Lake Shore and Michigan Central each own and operate separate lines of railroad between the cities of Toledo and Detroit, and the Lake Shore owns and operates a line of railroad extending from Detroit to Chicago, connecting with its main line at Elkhart, Ind.; that the Lake Shore and Michigan Central companies own or control and operate various roads connecting with their main lines in the states of Ohio, Indiana, and Michigan, and that the

Big Four and others of the defendants own and control various railroads connected with the system, and that the New York Central owns and controls a majority of the capital stock of the Lake Shore and of the Michigan Central companies, and that the New York Central owns the entire capital stock of the Western Transit Company, operating a line of boats over the Great Lakes between Buffalo and Chicago; that a certain act of Congress was duly enacted which forbade any contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations; and that the state of New York has duly enacted a statute of like purpose; and, upon information and belief, that an equipment trust agreement, dated January 1, 1913, was executed and delivered during the said month between the defendants Carstensen, Smith, and Rossiter of the first part, the defendant Guaranty Trust Company of New York, of the second part, and all of the defendant railroad companies of the third part, such agreement being set out in full; that on the application of defendant railroad companies the Public Service Commissions of New York and Ohio, and the Railroad Commission of Michigan, issued orders purporting to authorize the execution of the agreement and leases provided for therein and to issue certificates thereunder in the aggregate amount of $12,547,000; that the defendants have acted under these agreements and others, and that they threaten to continue to so act until the certificates shall reach an aggregate amount of $24,000,000; that the plaintiffs have duly protested against the issue of these securities, and that they have requested the president and board of directors of the Michigan Central Railroad Company to bring an action to set aside the said agreement, and that these officers have refused and neglected to bring such action; and that the plaintiffs have no adequate remedy at law, wherefore they demand judgment setting aside the agreement, and for other relief not necessary to be considered here.

[1] The agreement which is thus attacked as being ultra vires, illegal, and void is one of a series of like agreements dating back about six years, and under which many millions of dollars of trust certificates have been placed upon the market and sold, and are now in the hands of innocent holders for value, and all of this appears to have been done while the plaintiffs were owners and holders of this stock. Of course if the agreement is ultra vires, illegal, and void, the plaintiffs are entitled to maintain their action in behalf of the corporation, even though they have been passive while the issues of 1907, 1910, and 1912 were being negotiated and sold, but the court is not bound to search for a reason for declaring invalid that which has been accepted by interested parties for a series of years, and which has not been shown to have worked wrong to any one, and if the plaintiffs' pleadings do not justify the relief demanded, the order and judgment should not be disturbed. The agreement may be summarized briefly as a tri-party contract between John Carstensen, Alfred H. Smith, and Edward L. Rossiter, the vendors, of the first part, the Guaranty Trust Company, the trustee, of the second part, and the New York Central and Hudson River Railroad Company, the Michigan Central Railroad Company, and four other railroad corporations, known as "the Railroad Com-

panies," of the third part, by the terms of which the vendors agreed upon the request of the Railroad Companies from time to time to cause to be built or acquired and delivered to the trustee such equipment as may be specified in such requests, and to deliver the same to the particular railroad, requiring the equipment as the agent of the trustee, and the trustee, on its part, agrees to issue the certificates known as the "New York Central Lines Equipment Trust Certificates of 1913," to an amount equal to 90 per cent. of the cost of the equipment. The Railroad Companies on their part agree to lease from the trustee, for a term commencing on the date of such lease and ending January 1, 1928, the railway equipment so conveyed or caused to be conveyed to it by the vendors, and to pay a rental which shall be sufficient to pay all of the expenses of the trust, the interest, taxes, etc., and to discharge the obligations during the term. It is then agreed that the trustee is to retain the full legal title to the equipment covered by the lease until the Railroad Companies shall have fully complied with all the provisions of said trust agreement and with all the agreements of the leases, and shall have made all of the payments therein provided for, and that, upon the termination of this lease and the performance by the Railroad Companies of their covenants and obligations under said leases and under said trust agreement, the trustee shall convey and transfer to them, jointly or in severalty, and in such proportions as they may designate in writing under their several corporate seals—

"all of the equipment covered hereby, which shall thereafter be owned and enjoyed by said Railroad Companies free from any right or interest therein of the trustee or of the holders of said certificates."

Further, it is provided that in case of default on the part of the Railroad Companies in the payment of the rentals for a term of 90 days, and under the usual conditions, the trustee may declare the certificates due and payable, terminate the lease, and take possession of the equipment covered by such lease, and sell the same for the benefit of the certificate holders.

It will thus be seen that the defendant Railroad Companies, which are interrelated in the manner set forth in the complaint, and which will be hereafter more fully considered, have joined in a plan for the purchase of equipment for the operation of their several railroads upon the conditional sale basis. The vendors sell their equipment to the trustee, which leases the equipment to the Railroad Companies jointly and severally, the Railroad Companies, by an arrangement among themselves paying the rentals therefor in such proportions as will result in the payment of the trust certificates and all charges thereon during the term for which they are to run, and when the rentals have thus contributed a sum equal to the purchase price, with the expenses, the equipment is to become the property of the Railroad Companies. No suggestion is made that there is any fraud or bad faith in the transaction; no question is made that the six railroad corporations belonging to the New York Central Lines system need the equipment which is being purchased under this plan for the discharge of their public and private obligations, but the plaintiffs urge

that the effect of this agreement is to make the Michigan Central Railroad Company the guarantor of the obligations of the other five companies, and that this is ultra vires that corporation, as well as in violation of the Sherman act·and the statutes of the state of New York.

[2, 3] So far as the plaintiffs rely upon their ownership of stock in the Michigan Central Railroad Company to give them a standing as against the defendants, we are persuaded that they have clearly failed to state a good cause of action. The Michigan Central Railroad Company is alleged to be a foreign corporation—a corporation created by the laws of the state of Michigan—and there is nothing in the complaint to show that the statute law of the state of Michigan does not provide for just such a situation as is shown to exist. There is no presumption that the statute law of the state of Michigan is the· same as that of New York, or of any of the sister states. Southworth v. Morgan, 205 N. Y. 293, 296, 98 N. E. 490, and authorities there cited; International Text-Book Co. v. Connelly, 206 N. Y. 188, 200, 99 N. E. 722, 42 L. R. A. (N. S.) 1115. Nor is there any presumption that the officers of the Michigan Central Railroad Company have exceeded their lawful authority in dealing with the affairs of that corporation. Before we can hold that the complaint states a good cause of action for alleged usurpation of the power to guarantee the securities of other corporations having business affiliations with it, we must be able to find in the pleadings something to show that the laws of Michigan do not confer such a power upon its corporations. It would require but slight, if any, change in language, and little in spirit, to find within our own statutes a complete justification of the very acts which the plaintiffs criticise, and we cannot know that the state of Michigan has not deemed it wise to enable its railroad corporations to extend aid to its connecting and affiliated corporations (see section 8, Stock Corporation Law [Consol. Laws, c. 59]; section 55, Public Service Commissions Law [Consol. Laws, c. 48] of this state) in the absence of the statutes themselves, or some allegation as to their language.

[4] The suggestion that the mere joint purchase of equipment for affiliated railroads operating lines is in any way violative of the Sherman Law, or of the provisions of section 14 of the Stock Corporation Law of our own state, is so entirely fanciful that it does not seem necessary to give it any serious consideration at this time. The case presents none of the evils against which the statutes in question were intended to guard, and it is doubtful if a mere private individual is in a position to raise the question. Whatever combination there may be between these several railroads, their legal relations are in no wise changed by anything contained in these trust agreements, and it would be rather remarkable if in an action by a minority stockholder the whole question of the legality of the relations of these railroads could be inquired into in order to give him the relief which he seeks as against this particular transaction. We conclude, therefore, that in so far as the plaintiffs rely upon their·ownership of Michigan Central stock, they have failed to state a cause of action entitling them to relief, and we pass on to the consideration of the further question whether, as stockholders of ·the New York Central & Hudson River Railroad Company, they are in a better situation.

The allegations of the complaint are identical, except that the plaintiffs allege ownership of certain shares of stock in the New York Central Railroad Company, a domestic corporation, in place of the allegation in reference to the ownership of stock in the Michigan Central, a foreign corporation. Here we come to a closer question, broadly covering the one already disposed of, and it seems necessary to an understanding of the further provisions of the trust agreement which remain to be considered to look more minutely into the allegations of the complaint in reference to the relations of these defendant railroad corporations, and, for the sake of brevity, we will merely state the facts without the formalities of pleadings. The action, it will be remembered, is brought by minority stockholders in the interest of the New York Central & Hudson River Railroad Company. While it in form makes all of the corporations defendants, the theory of the complaint is that the New York Central & Hudson River Railroad Company is guaranteeing the obligations of the remaining railroad defendants, and the plaintiff, as a stockholder of the New York Central Company, is seeking to prevent that corporation from involving its credit in the transaction. The plaintiffs, so far as the present action is concerned, have no interest in any other corporation than the New York Central Company; they cannot be aggrieved because the other defendants may in effect have become guarantors of the purchases of equipment made for the New York Central Company, and which is needed for the discharge of its public obligations, as seems to be admitted by the pleadings. We are to look, therefore, to the relations of the New York Central Company with the other corporations, and to determine whether the plaintiffs are entitled to injunctive relief as a protection to the rights and interests of the New York Central Company.

The New York Central & Hudson River Railroad Company is a railroad company organized under the laws of New York, and is operating a line of railroad between the city of New York and the city of Buffalo, with various branch lines throughout the state of New York, and it is the owner and controls a majority of the capital stock of the Lake Shore & Michigan Southern Railroad Company, and of the Michigan Central Railroad Company. As such owner of a majority of the capital stock of these two corporations, it becomes responsible, through the boards of directors which it chooses, for the operation of these two corporations. It owes a duty to exercise the franchises of these corporations primarily to the public, and then to its own stockholders, for the majority interest in the properties belongs in equity to the owners of the stock of the New York Central & Hudson River Railroad Company, and their holdings in the parent company depend for their value upon the value of the stocks of the two corporations mentioned in a very large degree, not only as abstract property, but as feeders of the New York Central Railroad proper between Buffalo and tidewater. The next step is to consider the Lake Shore & Michigan Southern Railroad Company, which is a railroad corporation organized under the laws of the states of Illinois, Ohio, Michigan, Indiana, Pennsylvania, and New York, taking some element of its franchises, no doubt, from each of these states, and operating a line of railroad between Buffalo and Chicago, and other points in Ohio and Michigan, and this com-

pany is the owner of a majority of the capital stock of the New York, Chicago & St. Louis Railroad Company, operating a line of railroad between Buffalo and Chicago, but which is not a party to this litigation and has no interest in the trust equipment. This company is also the owner of a majority of the stock of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, one of the defendants, as well as a majority of the capital stock of the Pittsburgh & Lake Erie Railroad Company, and substantially all of the capital stock of the Toledo & Ohio Central Railway Company, both defendants herein, and these two latter companies, in turn, own majority holdings in the stocks of various railroads in the states of Pennsylvania and Ohio. The Michigan Central Railroad, organized under the laws of Michigan, is the owner of a majority of the stock of the Canada Southern Railroad, and, as we have already pointed out, is itself controlled by the New York Central Company through the ownership of a majority of its stock. It will thus be seen that the New York Central & Hudson River Railroad Company, by the ownership of the major portion of the stocks of the Lake Shore & Michigan Southern, and the Michigan Central Railroad Companies, which in turn are the owners of the majority of the stocks of the other defendants in this action, as well as of various other lines, is the equitable owner of a controlling interest in all of the defendant railroads, covering a considerable portion of the great states of New York, Pennsylvania, Ohio, Indiana, Michigan, and Illinois, and in active competition with the Pennsylvania Railroad, the Erie Railroad, and the Wabash and Grand Trunk Lines, not to mention the innumerable lines traversing the Great Lakes by steamboats between Buffalo, Cleveland, Detroit, and Chicago, and each one of these corporations so owned and controlled by the New York Central & Hudson River Railroad Company must, to retain its franchises and its value to the owning company, be equipped and operated to its highest or at least its minimum of efficiency.

[5-8] It is the business of the New York Central & Hudson River Railroad Company, as the ultimate owner of the controlling interest in the stocks of these various corporations, to equip and to operate these roads in such a manner as to produce the public purposes contemplated in their construction, and to contribute to the value of the stocks in the possession of the parent company, and to foster its own carrying trade to and from the seaboard. It is one of the franchises granted to the corporation by the state of New York, for it is provided by section 52 of the Stock Corporation Law that any—

"stock corporation, domestic or foreign, now existing or hereafter organized, * * * may purchase, acquire, hold and dispose of the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds or other obligations if authorized so to do by a provision in the certificate of incorporation of such stock corporation, or in any certificate amendatory thereof or supplementary thereto, filed in pursuance of law, or if the corporation whose stock is so purchased, acquired, held or disposed of, is engaged in a business similar to that of such stock corporation. * * * When any such corporation shall be a stockholder in any other corporation, as herein provided, its president or other officers shall be eligible to the office of director of such corporation, the same as if they were individually stockholders therein and the corporation holding such

stock shall possess and exercise in respect thereof, all the rights, powers and privileges of individual owners or holders of such stock."

The right to hold stock in other corporations, and to have its officers eligible to the board of directors of such other corporations, is clearly a franchise, for—

"franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country, generally, of common right."   Bank of Augusta v. Earle, 13 Pet. 595, 10 L. Ed. 274.

"The franchises of a railroad corporation," say the court in Morgan v. Louisiana, 93 U. S. 217, 223 (23 L. Ed. 860), "are rights or privileges which are essential to the operations of the corporation and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked."

· There is no limit to which one stock corporation may purchase and hold the stock of another stock corporation; no limit to the extent to which the corporation as such stockholder may intrude its officers into the directorate of the company whose stock is thus purchased, and this is an entirely reasonable provision of law, for the stockholders are the equitable owners of the corporation, and where one corporation purchases a majority of the stock of another, such purchasing corporation would naturally be entitled to control the affairs of the corporation in which it had become the owner, but such control would have to be consistent with the purposes for which the corporation was created.   Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 50, 51, 11 Sup. Ct. 478, 35 L. Ed. 55, and authorities there cited.   If we are right in this position, one of the franchises of the New York Central & Hudson River Railroad Company is to purchase the stock and control any other company, domestic or foreign, which may be engaged in a similar line of business with itself; it may add the tangible assets and franchises of a second company to itself, through the purchase of the stock of such corporation, subject to the duty of performing the service for which such corporation was organized, and if it may practically take over the management of such corporation it may properly use its assets thus augmented in performing the obligations of the company whose control has thus passed to itself, and what the New York Central & Hudson River Railroad Company may do the Lake Shore & Michigan Southern Railroad Company, in so far as it is a New York corporation, may properly do.   If the New York Central & Hudson River Railroad Company was merely authorized to purchase the stock as an investment, it would have no other rights, but when the statute adds to the power of purchase the right to actively participate in the choice of directors, and makes the officers of the purchasing company eligible to the board of directors, without limitation, it necessarily imposes upon the purchasing corporation the duty of maintaining the company thus surrendered to its care in a position to discharge its duties to the public, and, as the purchasing company's resources are increased to the value of the stock thus purchased, it is in duty bound to make use of its resources, where necessary, to perform the obligations of the company whose stock it holds; this being dictated by the welfare of the purchasing company, in harmony with the duty suggested.

This seems to us to be made entirely clear by the broad provision of section 6 of the Stock Corporation Law, which provides that, in addition to the powers conferred by the General Corporation Law (Consol. Laws, c. 23):

"Every stock corporation shall have the power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of any such obligations, or of any debt contracted for such purposes."

Here is a very broad power to borrow money for "the transaction of its business, or for the exercise of its corporate rights, privileges or franchises," and to issue and dispose of its obligations for these purposes, and what it may do directly it may clearly do through the intervention of a trustee. See People v. New York Central & H. R. R. R. Co., 138 App. Div. 601, 123 N. Y. Supp. 125. It is manifestly the business of the New York Central & Hudson River Railroad Company, as the owner of the majority of the stock of the Lake Shore & Michigan Southern Railroad Company, to so operate the latter company as to make the stock of the highest possible value to the holding company; it is the exercise of its rights, privileges, or franchises to so control the affairs of the Lake Shore & Michigan Southern Railroad Company as to make it conduce to the well-being of the corporation holding a majority of its stock, and the position of the New York Central & Hudson River Railroad Company, as one of the parties to the equipment trust is merely that of a borrower for its own corporate purposes, "for the transaction of its business," and the fact that the corporations in which it holds a controlling interest are made parties to the agreement is of but little practical consequence. It gives a certain weight and dignity to the transaction by reason of its extent, and it cannot be doubted that there are practical business considerations which justify the plaintiffs' corporation in providing for the general equipment, rather than forcing each corporation to make its own financial arrangements during a period of depression. We conclude, therefore, that the New York Central & Hudson River Railroad Company, in so far as it is a guarantor of the purchases under the trust, is merely fulfilling its mission as the equitable owner of the major portion of the stocks of the various corporations involved, and that if it stood alone in the transaction, it would, as such owner, be practically pledging the assets of the various corporations to the performance of the contract, and that the plaintiffs, as stockholders, would have no just grievance, assuming, of course, that the transaction upon its merits is in good faith and for the benefit of the corporation, and no question is made of this assumption.

Taking this view of the matter, it is not material that we should consider the further provisions of the agreement, but it may not be out of place to call attention to the fact that the trust agreement provides that in case of the default of any of the Railroad Companies in making payments into the rental fund, the remaining parties to the agreement

may be substituted in the place of such defaulting company, receiving the share of the equipment involved in the default upon paying the equitable equivalent to the trust fund, so that if it be assumed that there will be a default on the part of some one or more of the companies, the New York Central & Hudson River Railroad Company, or some of the other parties, may step into the shoes of the defaulting corporation, and thus no one of the parties to the agreement will be called upon to pay for any equipment which does not come to them within the terms of the agreement. The contention of the plaintiffs that their corporation is involved as a guarantor is therefore shadowy and unreal, and hardly calculated to appeal to the conscience of the court. If the parties to the agreement were strangers; if there was no community of interest between the corporations, such as is alleged in the complaint, there might be some ground for the action; but when it is remembered that the New York Central & Hudson River Railroad Company is the equitable owner of the major part of all of the corporations involved; that it is permitted to induct its own officers into the boards of directors of the several corporations, and is vitally interested in their welfare, as upon their prosperity depends the value of its own holdings in such corporations—the contention of the plaintiffs loses its force, and when we find that the laws of this state have provided a system under which the corporation is permitted to use its credit for the very purposes contemplated in the trust agreement, the whole case fails; no cause of action is stated.

While it does not seem important to us to consider the alleged violation of the Sherman Law, and of our own section 14 of the Stock Corporation Law, the question, in so far as it relates to section 14, is fully disposed of by the discussion in Matter of Attorney General, 124 App. Div. 401, 404, 108 N. Y. Supp. 823, and we are persuaded that the plaintiffs' rights under the Sherman Law are on no better footing.

The orders and judgments appealed from should be affirmed, with costs.

SMITH, P. J. (concurring). The opinion of Mr. Justice WOODWARD holds that no party to the contract becomes a guarantor for another party because of the provision entitling a party paying the obligation of another party to the equipment allotted to such other party. To this I cannot agree. The right to such equipment given upon payment of the other party's obligation cannot, in my judgment, change a contract of guaranty into any other form of contract; it still remains a contract of guaranty with collateral. Except as to this holding, I concur in the opinion.

JOHN M. KELLOGG, J. (concurring in result). Without further consideration I am unwilling to agree that the Public Service Commission has the legal right to authorize the issue of these certificates, but a decision of that question is not necessary, and I express no opinion thereon.

Section 55 of the Public Service Commission Law applies to these certificates, and they could issue only after the approval of the Com-

mission. People v. New York Central & H. R. R. Co., 138 App. Div. 601, 123 N. Y. Supp. 125, affirmed 199 N. Y. 539, 92 N. E. 1096.

In determining whether it should approve of the certificates, the Commission was called upon to determine whether they were being issued in accordance to law. If they were being issued pursuant to an illegal combination under the Sherman Anti-Trust Law, or for purposes not permitted by the laws of the state, it was the duty of the Commission to refuse its approval. The plaintiff was heard before the Commission, and when it granted its approval to the issue he asked no reconsideration of the order, and took no steps to review the determination by certiorari. If he is right about the law, he had it within his power to prevent the issue. Upon a review of the determination this court would have been called upon to determine the legal questions raised. But he elected to take no such proceeding, and thereby permitted the certificates to issue, and they are now in the hands of purchasers in good faith. These certificates were issued and sold and the proceeds used in the manner prescribed by the public authorities. The bona fide holders, therefore, may have rights which ought to be determined when they are present in court. The possibility that the plaintiff or the companies may suffer damage is so shadowy that it seems more important that the holders of the certificates should have a legal day in court, if the question ever becomes a live one, than that the court should now answer the questions propounded by the plaintiff. A determination in his favor can do the company no good, and cannot benefit him. It could only tend to depress the securities of the company, which would injure the public, the company and the plaintiff so far as his interest as a stockholder is concerned. Such a determination could only benefit him if he has some ulterior purpose to serve. The court can only aid him so far as a determination might benefit the company and the persons interested therein as stockholders. The interest which enables plaintiff to bring this action would enable him, after having made objection before the Commission, to take proper proceedings to review its determination. It is true the Commission has approved of the contract; but no further certificate can issue without another application to the Commission, and if such application is made the plaintiff may be heard, and if the hearing results unsatisfactory to him he will have ample opportunity to review it.

For the protection of the stockholders and the public the laws of the state have provided the Commission to prevent the issue of illegal and improper securities, and an application for a rehearing gives an opportunity to any party aggrieved to test the determination by certiorari. The law has therefore provided the plaintiff a legal remedy, which if he had pursued, would have fully protected him, without injury to the company or to the public. He raised like objections at the hearings before like Commissions in the states of Ohio and Michigan, with the same results. We assume that the common-law certiorari, unless some statutory remedy was provided, gave him ample opportunity to review these determinations in a proper court. Plaintiff has slept too long to now insist upon a hearing in a court of equity

as to his technical rights. The court will now leave the matter, so far as he is concerned, where he left it.

I favor an affirmance upon the ground that the plaintiff is not now entitled to equitable relief.