# THE

# MISCELLANEOUS REPORTS

OF THE

# STATE OF NEW YORK

COMMENCING JANUARY, 1922

---

JAMES A. GREEN, Suing on Behalf of Himself and Other
Bondholders, Similarly Situated, of the PEOPLE'S GAS LIGHT
AND COKE COMPANY OF BUFFALO, Who May Desire to Come
in and Become Parties and Contribute to the Expenses of This
Action, Plaintiff, *v.* PEOPLE'S GAS LIGHT AND COKE COMPANY
OF BUFFALO et al., Defendants.

Supreme Court, Erie Equity Term, January, 1922.

Corporations — directors — power to lease and transfer property —
rights of creditors — trust mortgage — bond issue — acquisition of
stock by similar corporations — attempted merger — acquisition of
part of bond issue by merger corporation — diversion of revenue —
default in bond interest — rights of individual bondholder — priority
over bonds held by merger corporation — attempt to evade section 15
of Stock Corporation Law.

The power to lease the property of one corporation to another is primarily in the
board of directors.
A board of directors of a corporation, however chosen, may not legally convey its
revenues or assets to another corporation for the purpose of defeating the rights
of creditors.
The defendant corporation, a gas light and coke company, having an authorized
capital of 30,000 shares of $100 each, to secure the payment of an issue of bonds,
duly provided for under section 6 of the Stock Corporation Law, and amounting
in the aggregate to $2,100,000, executed and delivered a mortgage or deed of
trust upon all of its property, which exceeded in cost $5,000,000, with interest
at five per cent and containing the usual provisions for advancing the maturity
of the obligations in the event of default in the payment of interest. The out-
standing stock, amounting to 27,024 shares, was acquired by a gas company
which, under section 52 of the Stock Corporation Law, was permitted to possess
and exercise all the rights, powers and privileges of individual owners or holders
of such stock, including the right to elect officers to the directorate of the mort-
gagor corporation, a power which was fully exercised, although there was no
technical merger of both corporations. Subsequent to the making and delivery
of the mortgage the board of directors chosen by the gas company for the other
corporation entered into a so-called lease, by the terms of which the other cor-
poration transferred its gas works and properties to the gas company for no
other consideration than the payment of taxes and assessments to be thereafter
levied thereon, and the obligation to keep its machinery and plant in order and
insured. Under said lease the gas company claims the right to operate the plant

of the other corporation and to absorb its revenues. In a representative action to foreclose the mortgage brought by the owner of bonds issued thereunder, upon which the principal would become due January 1, 1928, and upon which no interest has been paid for years, the complaint alleged that there were other bonds of the same issue which were disposed of under like conditions as the bonds owned by plaintiff. *Held*, that the action was within the cognizance of equity; that the plaintiff was entitled to the relief demanded, at least to the extent that the bonds held by him and others, under similar circumstances, should be decreed a lien prior to the bonds held by the gas company.

The gas company not having complied with the conditions of section 15 of the Stock Corporation Law, was not entitled to the position of a merging corporation, and the directors chosen by it for the other corporation could not lawfully do any acts which operated to divert its revenues to the gas company, except as might be done by payment of dividends in the manner provided by law or under special statutory provision.

While the statute (Stock Corporation Law, § 15) provides for a merger of corporations engaged in the same line of business where one of them purchases all of the stock of the other upon the condition that the rights of creditors shall not be prejudiced, the gas company seeking through the instrumentality of the lease, without any reference to the rights of *bona fide* creditors, to do indirectly what the law forbade its doing directly, ran counter to well-settled principles of law.

Certain of the bonds owned by the gas company held to have become merged, at least as against holders of the remainder of the outstanding bond issue, by reason of the contemporary ownership of the gas company of the bonds acquired by it and of all of the capital stock of the other company, and the enforcement of said bonds on a parity with those acquired by third parties would be unjust and inequitable

SUIT in equity for foreclosure of corporate mortgage.

*Fleischmann & Pooley (Simon Fleischmann* and *David Gerber,* of counsel), for plaintiff.

*Kenefick, Cooke, Mitchell & Bass (Daniel J. Kenefick* and *Charles P. Franchot,* of counsel), for defendants Judge and others.

*Murray, Prentice & Howland (Henry Place,* of counsel), for defendant The Equitable Trust Company of New York, successor trustee to Colonial Trust Company, as trustee.

*Locke, Babcock, Spratt & Hollister (Louis L. Babcock,* of counsel), for defendants Alexander C. Humphreys and Harry T. Ramsdell, as receivers of the Buffalo Gas Company.

WOODWARD, J. The defendant People's Gas Light and Coke Company, a domestic corporation, duly authorized and subsequently executed and delivered its certain mortgage or deed of trust to the Colonial Trust Company on or about the 11th day of December, 1897, for the purpose of securing an issue of bonds in the aggregate amount of $2,100,000. This mortgage covered all of the property of the corporation, which, as appears from the sworn official statements of the company's officers, cost in excess of $5,000,000, and provided for interest at the rate of five per cent per annum, with the usual provisions for advancing the maturity of the obligations in the event of default in the payment of interest. The plaintiff

in the present action is the owner of bonds issued under the provisions of this mortgage or deed of trust to the amount of $13,000 upon which the principal would become due on the 1st day of January, 1928, and upon which no interest has been paid for a period of years. The action is representative in its character, it being alleged that there are other bonds of this issue which were disposed of under like conditions as those surrounding the bonds owned by the plaintiff, and it appears that the People's Gas Light and Coke Company, except for the complications hereinafter to be noted, would be in a position to provide for the discharge of its obligations to the plaintiff and others in a like situation.

The defendant People's Gas Light and Coke Company had an authorized capital stock of 30,000 shares of $100 each, of which amount 27,024 shares have been issued and are now outstanding. This outstanding stock was acquired by the Buffalo Gas Company, to whose rights the defendant William J. Judge has succeeded. The Buffalo Gas Company, under the provisions of section 52 of the Stock Corporation Law, was permitted to " possess and exercise in respect thereof, all the rights, powers and privileges of individual owners or holders of such stock," including the right to elect its own officers to the directorate of the People's Gas Light and Coke Company (*Venner* v. *New York Central & H. R. R. R. Co.*, 160 App. Div. 127; affd., 217 N. Y. 615), a power which was fully exercised. But the People's Gas Light and Coke Company was not technically merged in the Buffalo Gas Company. The board of directors of the People's Gas Light and Coke Company, no matter how chosen, must exercise all the powers of the corporation, subject to the general law and to the by-laws of the People's Gas Light and Coke Company, and, if they act in good faith and without fraud or collusion, their action is conclusive upon the corporation (*Beveridge* v. *N. Y. E. R. Co.*, 112 N. Y. 1, 23), though not necessarily so as to individuals who stand in the relation of the creditors to the corporation. In other words, the Buffalo Gas Company as the owner of the capital stock of the People's Gas Company becomes responsible, through the board of directors which it chooses, for the operation of the latter company. It owes a duty to exercise the franchises of this corporation, primarily to the public, and then to its own stockholders, for the interest in the property belongs in equity to the owners of the stock of the Buffalo Gas Company (*Venner* v. *New York Central & H. R. R. R. Co.*, *supra*), subject, however, to the rights of the owners of obligations issued for the lawful purposes of the People's Gas Light and Coke Company.

Prior to the acquisition of this stock by the Buffalo Gas Company, the People's Gas Light and Coke Company had provided for the

issuance of its obligations under the provisions of section 6 of the Stock Corporation Law, which authorizes the borrowing of money for its legitimate purposes, and to " mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for said purposes," and the mortgage under which the plaintiff claims became a lien, not alone upon the real estate and tangible property, but upon the operating franchises. There was, in effect, an agreement on the part of the People's Gas Light and Coke Company that it would maintain a going corporation and preserve its franchises for the benefit of the bonds to be issued under the mortgage; that it would operate the plant to produce the revenues necessary to meet the obligations, and the board of directors chosen by the Buffalo Gas Company, by reason of its ownership of all the stock, entered upon the discharge of their duties, subject to the obligations of this contract. It became the duty of the Buffalo Gas Company, as the owner of the People's Gas Light and Coke Company, so to operate the latter company as to make the stock of the highest possible value to the holding company. In the exercise of its rights, privileges or franchises the Buffalo Gas Company was required so to control the affairs of the People's Gas Light and Coke Company as to make it conduce to the well-being of the corporation holding the majority of its stock (*Venner* v. *New York Central & H. R. R. R. Co.*, *supra*, 139, 140), and to preserve the rights of those who had become the purchasers of its obligations. The language of the statute is clear; the corporation holding the controlling stock " shall possess and exercise in respect thereof," not the powers of the board of directors of the corporation, but " all the rights, powers and privileges of individual owners or holders of such stock." Stock Corp. Law, § 52. The power of leasing the property of one corporation to another is primarily in the board of directors (*Beveridge* v. *N. Y. E. R. Co.*, 112 N. Y. 1, 23), if at all, and not in the owners of the stock as such, and while the statute provides that the officers of the holding corporation are eligible to membership in the directorate of the corporation whose stock is thus owned, the statute still commands that " The affairs of every corporation shall be managed by its board of directors " (Gen. Corp. Law, § 34), and there is no authority, in law, for a board of directors, however chosen, to convey its revenues or assets to another corporation for the purpose of defeating the rights of creditors. " Good faith is the standard erected by the law, by which all their acts and omissions are to be judged." *Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215, 226; *Shaw* v. *Railroad Company*, 100 U. S. 605. The law does not contemplate, under the provisions of section 52 (Stock Corp. Law),

the practical destruction of the corporation whose stock has been purchased by another corporation, and the absorbing of its franchises by the latter, but a continuation of the corporate being as a part of the assets of the corporation owning the stock, in the same manner as though such purchasing corporation was a private individual. It contemplates the actual operation of the corporation, with the same regard for the rights of stockholders and creditors that existed while the stock was in the hands of individual owners, while section 15 of the Stock Corporation Law provides for a merger, where one corporation owns all of the stock of a stock corporation, upon conforming to certain requirements of the statute, and " thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoyed by it as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof."

The Buffalo Gas Company, as the owner of the entire stock of the People's Gas Light and Coke Company, might have merged the latter corporation with itself, preserving the rights of creditors, but it is not pretended that it complied with the conditions of section 15 of the Stock Corporation Law, and it is not entitled, therefore, to the position of a merging corporation. It had a right to elect its officers and others to the board of directors of the People's Gas Light and Coke Company, but the directors thus chosen owed the same duties to the corporation and its creditors that it did when the mortgage here under consideration was authorized and delivered to the Colonial Trust Company as trustee, and they could not lawfully do any act which operated to divert its revenues to the Buffalo Gas Company, except as this might be done by the payment of dividends in the manner provided by law, or under some special provision of the statutes.

Instead, however, of following the clearly indicated policy of the law, the board of directors, chosen by the Buffalo Gas Company, for the People's Gas Light and Coke Company (composed substantially of the same individuals), entered into a so-called lease, subsequent to the making and delivery of the mortgage, by the terms of which the People's Gas Light and Coke Company transferred the gas works and properties of said corporation to the Buffalo Gas Company for no other consideration than the payment of taxes and assessments thereafter to be levied thereon, and the obligation to keep its machinery and plant in order and

insured; and the Buffalo Gas Company now claims the right to operate the plant and to absorb the revenues of the People's Gas Light and Coke Company, not by virtue of its ownership of the stock of the latter company, but under this so-called lease. In other words, while the statute provides for a merger of corporations engaged in the same line of business where one of them purchases all of the stock of the other, upon the condition that the rights of creditors shall not be prejudiced, the Buffalo Gas Company has sought to produce this practical result through the instrumentality of a lease between its creature and itself, without any reference to the rights of *bona fide* creditors. It has sought to do by indirection what the law forbade its doing directly, and this runs counter to well-settled principles of law. *Fairbanks* v. *United States*, 181 U. S. 283, 294; *Brown* v. *Maryland*, 12 Wheat. 419; *Clark* v. *Clark*, 178 U. S. 186, 192. By depriving the People's Gas Light and Coke Company of its operating revenues, the Buffalo Gas Company, which created and controlled the board of directors of the former, has produced the default in the payment of interest upon which this action finds its primary justification, and it is idle to suggest that a court of equity is without power to right this wrong, simply because the terms of the mortgage provide for the action of the trustees under certain conditions of default in the payment of interest, and the trustee refuses to act in behalf of this plaintiff. " The bondholders are the beneficiaries of the mortgage, or deed of trust, and that instrument contains, in effect, a contract made for their benefit, through a trustee as a convenient intermediary. It is upon that principle that such an action as this is permitted. (*Beveridge* v. *New York El. R. R. Co.*, 112 N. Y. 1, 26.) Whatever rights were vested in the trustee through the mortgage instrument, as against the mortgagors, inured to the benefit of the bondholder as the beneficiary, and are enforcible by him, in the case of refusal or neglect on the part of his trustee to act for him upon his making proper request." *O'Beirne* v. *Allegheny & Kinsua R. R. Co.*, 151 N. Y. 372, 383, 384.

If the board of directors chosen by the Buffalo Gas Company had carried on the business of the People's Gas Light and Coke Company, relying upon the earning of dividends for its income the same as other stockholders, it is quite likely that a court of equity might be justified in denying relief to a small bondholder, in disregard of the particular terms of the mortgage, but this is not the case presented by the record. The Buffalo Gas Company, in disregard of law, has in form rendered the People's Gas Light and Coke Company incapable of meeting its obligations through the use of its property and franchises covered by the mortgage in

question; it has not acted in good faith as the owner of the stock and controller of the board of directors of the latter company, but, on the contrary, having obtained possession of a large majority of the bonds of the People's Gas Light and Coke Company, now unfairly urges, as an objection to the maintenance of this action by a minority bondholder, its ownership of this large preponderance of the bonds referred to in the original mortgage. With these bonds so held by the Buffalo Gas Company, or its successor, Mr. Judge, outstanding and an apparent lien upon the property and franchises of the People's Gas Light and Coke Company, in the hands of persons whose interests are in conflict with those of the plaintiff, it is impossible, of course, to get the requisite number of bondholders to compel action on the part of the trustee, and unless this court may look beneath the form and into the substance of the transactions, the plaintiff is without remedy, though there is no substantial dispute that he is the owner for value of securities which, except for the manipulations of the Buffalo Gas Company and other defendants, would be practically the equivalent of cash.

I am also satisfied that, under the circumstances of this case, and under well-settled authorities, the $2,045 of bonds of the People's Gas Light and Coke Company, held by the Buffalo Gas Company, became merged, at least, as against holders of the remainder of the outstanding bond issue, by reason of the contemporary ownership by the Buffalo Gas Company of the bonds acquired by it, and of all of the capital stock of the People's Gas Light and Coke Company. The enforcement of the bonds so held by the Buffalo Gas Company, on a parity with the bonds acquired by third parties, would, it seems to me, be unjust and inequitable. *United States* v. *Northern Securities Co.,* 120 Fed. Rep. 721; affd., 193 U. S. 197; *United States* v. *United Shoe Machinery Co.,* 234 Fed. Rep. 127; *Globe Woolen Co.* v. *Utica G. & El. Co.,* 224 N. Y. 483; *United States* v. *Milwaukee Refrigerator Transit Co.,* 142 Fed. Rep. 247; *St. Paul, M. & M. Ry. Co.* v. *Western Union Tel. Co.,* 118 id. 497; *Central of Georgia Ry. Co.* v. *Central Trust Co. of N. Y.,* 135 Ga. 472; *Hunter* v. *Baker Motor Vehicle Co.,* 190 Fed. Rep. 665; *McGiven* v. *Wheelock,* 7 Barb. 22; *Lynch* v. *Pfeiffer,* 110 N. Y. 33; *Weis* v. *Levy,* 106 App. Div. 496; *Batesville Institution* v. *Kauffman,* 85 U. S. 151; *Block* v. *Cronkhite,* 1 Hill, 107–109; *James* v. *Morey,* 2 Cow. 246, 318; *Clift* v. *White,* 12 N. Y. 519, 526–532.

I am clearly of the opinion that the plaintiff is entitled to the relief demanded in the complaint, to the extent at least that the bonds held by him and others, under similar circumstances, should be decreed to be a lien prior to that of the bonds held by the Buffalo

Supreme Court, January, 1922.          [Vol. 118

Gas Company. But it does not appear that the plaintiff has any interest beyond the collection of the amount due to him and to those similarly situated and who may become parties to the action, under well-settled rules. I have no doubt that the action is one within the cognizance of equity, and that relief should be moulded to protect the rights of the plaintiff and other interested parties.

Let findings and judgment be prepared in accordance with this memorandum.

Judgment accordingly.