Alexander Del Gtorno, J.
This is a motion for an order permitting the late filing of a claim in accordance with the provisions of subdivision 5 of section 10 of the Court of Claims Act.
On February 24, 1958, claimant was a passenger in an airplane owned by the New York National Guard and piloted by one 1st Lt. Peter C. Nast, a member of the 42nd Division of the New York National Guard, a part of the Army Aviation branch of the service. The plane had flown originally from Zahn’s Airport, Amityville, Long Island, to Northampton, Massachusetts ; on the return trip, as the pilot approached the Connecticut River, he brought the plane down to a point near the surface of the river, striking some power lines and crashing to the ice-covered river. As a result of what claimant alleges to have been negligent operation of the plane, the said Nast was killed instantly and claimant suffered severe injury.
For the purpose of clarity, the court wiH confine itself to a discussion of what it considers to be the two main points of the *955 argument herein: (1) that claimant was mistaken as to the facts giving rise to a claim against the State and (2) that because of his alleged nonresidence within the State, claimant’s mistake of law as to the necessity for filing within the statutory period excuses his failure to comply with the statute.
One element of the factual situation is knowledge of claimant that he was traveling in a New York National Guard plane as distinguished from a plane of the Federal Government on the day of the accident. From a reading of the affidavits presented by both sides on this phase of the controversy, it is most difficult for the court to reach a conclusion because of the extremely conflicting versions presented. .Claimant alleges that he met Nast for the first time on December 2, 1957; that he had flown with Nast on two prior occasions, in December, 1957 and January, 1958, but not from Zahn’s Airport at Amityville; that he himself was a member of the Federal Naval Reserve and that he assumed Nast was connected with the Federal Government; that on the three flights he made with Nast, the latter wore a regular U. S. Army uniform; that he noticed no sign indicating that the New York National Guard controlled the base, and that even if there were such sign, no particular significance could be attached to that fact since at other airfields there are other types of National Guard units belonging to the Air Force, the Army, the New York Police and Navy and Marine Reserve units. The State, on the other hand, asserts that claimant and Nast had been friendly for a longer period than that stated by claimant; that the claimant knew that Nast was affiliated with the New York National Guard; that there are certain signs marking the airport as a New York National Guard base and that planes are so marked; that Zahn’s Airport at Amityville is leased by the New York Army National Guard for the storage and maintenance of its planes. Attached to the State’s opposing affidavit is a local flight clearance form, dated February 24, 1958 signed by the claimant. This form is headed with the words: “ Army Aviation Sect. (NYNG) Zahn’s Airport, Amityville, New York”; at the bottom of this page is a statement signed by claimant, reading “ For Passengers: (NG, Reserve, Retired Military, CMH holders and Red Cross only) ” — Ex. I, affidavit dated June 19,1958. As to this, claimant submits there is nothing to show he had knowledge of the fact that he was on a New York National Guard mission. Also attached is a statement signed by claimant, dated February 27, 1958, in which he acknowledges that he “ was voluntarily a passenger in NYNG aircraft #471373 piloted by 1st Lt. Peter 0. Nast on 24 Feb. 58”. With respect to this statement, claimant states that he *956 signed it three days after the accident, while he was confined to bed in the hospital, and that there is nothing therein contained which is inconsistent with his belief that Nast was a Reserve U. S. Army officer.
On May 7,1958, within the statutory period for the filing of a claim, claimant retained one George B. Rowlings, Esq., a member of the Massachusetts Bar, to represent him in a contemplated action at law. On May 8, 1958, Mr. Rawlings wrote a letter to Captain John Mirro, commanding officer at Zahn’s Airport, requesting information as to the military status of Nast and as to the nature of the flight which resulted in the accident. No answer was received by him until May 26, 1958, which was 91 days after the cause of action had accrued, at which time, by a letter dated May 23, 1958, he was informed by Colonel Charles A. Willis, Chief of Staff, Headquarters, 42nd Infantry Division, New York National Guard that “ paragraph 21, Military Regulations, State of New York, dated 22 May 1956, precludes this Headquarters from furnishing the information you desire. We have forwarded your request to the Office of The Adjutant General, State of New York, 112 State Street, Albany, New York”. On May 28, 1958, the said attorney received a letter, dated May 27, 1958, from Colonel Charles G. Stevenson, State Judge Advocate of the State of New York, who informed him that he had been asked by the Adjutant General to advise Mr. Rowlings that the original letter had been forwarded to Honorable Louis J. Lefkowitz, and that “ since the matter involves a possible claim against the State under the New York Court of Claims Act, all further correspondence in connection with the matter should be addressed to the Attorney General.” On June 3, 1958, the attorney received a letter dated June 2, 1958, from the office of the Attorney-General, stating that the matter had been referred to him by the Division of Military and Naval Affairs and advising that any claim is governed by the Court of Claims Act with its time limitations. On May 29,1958, the said attorney communicated with Philip J. O’Brien, Esq., of the New York Bar, with respect to the possible presentation of the claim against the State of New York.
Prior to the receipt of the letters hereinabove referred to, Mr. Rowlings did not have knowledge that a claim necessarily existed against the State of New York, and did not know of the time limitation for the filing of a claim contained in the New York State Court of Claims Act.
In addition to the foregoing, claimant states that although in his proposed notice of claim, submitted on this application, he gave his address as 410 Riverside Drive, New York City, such *957 address was merely Ms post-office address and that actually he was not a resident of the State of New York. Born in Newton, Massachusetts in 1931, he was taken by his parents shortly thereafter to New Hampshire, where he has had continuous residence since that time. His family maintains a winter home in the Boston area for climate as well as business reasons, but the adult members of Ms family and claimant vote and pay taxes in that State. During his four years in the United States Armed Service, he voted in New Hampshire and returned there after his active duty had ended. He commenced working for Pan American Airways on December 2, 1957, renting a New York City apartment, where he remained to February 24, 1958. He then moved to 410 Riverside Drive, for the remainder of Ms stay in New York City. In early June, 1958, he was transferred by Ms employer to San Francisco, where he presently resides. He states that he never voted or paid taxes in New York State and does not consider it the State of his residence.
The court will consider first the question as to whether non-residence can excuse claimant’s ignorance of or mistake of law as to the necessity for filing a claim within the statutory period of time provided for by the New York Court of Claims Act.
The Court of Claims Act is purely statutory and higMy technical so far as the filing of claims against the State is concerned. While it is generally true that ignorance of the law is no excuse and has been so held in some matters involving the filing of claims in this court, nevertheless the court does not believe that a nonresident, under some conditions, can be held to the same strict accountability to which a resident is held. Ignorance of the law is defined in Ballantine’s Law Dictionary (1948 ed., p. 604) as follows: “ Within the meaning of the presumption that every one knows the law and hence, the rule that ignorance of the law is not excused, the expression ‘ ignorance of the law ’ means ignorance of the laws of one’s own country or state and it does not extend to foreign laws or statutes of other states.” Richardson on Evidence (8th ed., § 82) states: “ It is stated frequently that every one is conclusively presumed to know the law. * * * In. reality, there is no such presumption. (Municipal Metallic Bed Mfg. Corp. v. Dobbs, 253 N. Y. 313, 317.) What is meant by this ‘ presumption ’ is that ordinarily ignorance of the law will not excuse a man from the legal consequences of his acts. TMs is for the reason that the substantive law governing the question of civil or criminal liability ordinarily makes the existence of actual knowledge of the law wholly immaterial.” In section 83 of the same work it is stated, in effect, that the common law is presumed to continue *958 in all States of common-law origin. In the absence of evidence, the presumption is that the common law of the sister State is the same as that of the forum. However, there is no presumption that the statutory law of a sister State is the same as that of the forum. (Venner v. New York Cent. & Hudson Riv. R. R. Co., 160 App. Div. 127, 133, affd. 217 N. Y. 615.) A mistake concerning the statute of another State is treated as a mistake of fact (31 C. J. S., Evidence, § 132, subd. b, par. 4, p. 761).
The Court of Claims has held on previous occasions that < ‘ ignorance of the law is no excuse ’ ’ particularly in the case of Haney v. State of New York (190 Misc. 493, 494). The claimant there had resided all his life in Tennessee, came to New York temporarily and was injured while there, returning to Tennessee after the accident. For his failure to file his Al aim in time, he offered as his excuse that he was ignorant of our laws and was unaware that he could make a claim for damages against the State until he was apprised of such fact by the widow of his brother who had died as a result of injuries received in the same accident. The court held (p. 494) that “ ignorance of the law is no excuse ”, citing Burchetta v. State of New York (43 N. Y. S. 2d 289); Kahn v. State of New York (178 Misc. 272); Monahan v. State of New York (189 Misc. 533) and Williams v. State of New York (175 Misc. 972). It is to be noted that all of these cases involved a resident of the State of New York. The court held further that the fact that the claimant was a nonresident did not extend to him any greater right under the statute than should be accorded a resident, and that any relief that might be given must be given by the Legislature. The application was dismissed upon the ground that claimant had not shown any reasonable excuse for the delay in filing.
More recently, however, there has been a definite indication that a nonresident is not to be held as strictly accountable for compliance with the statute as a resident. This is exemplified notably by the case of Potter v. State of New York (5 A D 2d 725) decided December 19, 1957. There a widow, as administratrix, brought a proceeding against the State in a claim for the death of the deceased, her husband. The accident occurred on September 24, 1955. On July 10, 1956, claimant, a resident of Illinois, was appointed administratrix of the estate. She failed to file a claim with the Court of Claims within 90 days but moved to file a claim with the Court of Claims six months thereafter, alleging as an excuse that she was ignorant of the laws and customs of the State of New York and that she was not aware that she had a claim against the State of New York until she had been apprised recently of *959 such fact. There was no assertion by the State that it did not have knowledge of the facts relating to the accident. In affirming an order of the Court of Claims granting claimant leave to file a late claim, the Appellate Division, Third Department held: “ The State’s position on this appeal is that ignorance of the law is not a reasonable excuse. There are eases which sustain this view (Stone v. State of New York, 206 Misc. 720; Guifre v. State of New York, 192 Misc. 480; Haney v. State of New York, 190 Misc. 493). However such cases are not if so facto controlling so far at the exercise of discretionary power is concerned. The Court of Claims in the exercise of its discretion in this case did not ignore the proposition that ignorance of the law is ordinarily not a reason for granting permission to file a late claim, but nevertheless exercised its discretion in the light of the circumstances of this case where a widow was responsible for the legal interests of four minor children, and also upon the basis that claimant was a resident of Illinois at all times and could not be expected to be familiar with the Court of Claims Act of this State. It may be added that many States have not waived their sovereign immunity to claims of this character, and a nonresident might very readily be unfamiliar with the situation in New York in that respect. We find no compelling reason therefore to interfere with the discretion of the court below.”
On this application, the State has not controverted the allegations of the claimant on the issue of nonresidence. Assuming such allegation^ to be true, the court finds that claimant is not a resident of the State of New York.
In the light of all of the foregoing, and in view of all of the surrounding circumstances in this case, the court finds that claimant has presented a reasonable excuse for his failure to file his claim, that the State had, prior to the expiration of the time limited for the filing of the notice of intention, actual knowledge of the essential facts constituting the claim and that the State has not been substantially prejudiced by the failure of the claimant to file within the time limited.
Accordingly, it becomes unnecessary to determine the question as to whether claimant was mistaken as to the facts giving rise to a claim against the State, for sufficient legal excuse has been presented.
The motion is granted, upon condition that claimant file his claim within 20 days from the date of the entry and service of an order to be entered upon this decision in accordance with the terms thereof.
Submit order.